# NO. 12-13-00165-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SUSAN JACKSON HOLDEN AND TERRY HOLDEN, APPELLANTS* | § | *APPEAL FROM THE 354TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *CHARLES LYLE HOLDEN, AS THE INDEPENDENT EXECUTOR OF THE ESTATE OF ROSIE EUNICE HOLDEN, DECEASED, APPELLEE* | | |
| | § | *RAINS COUNTY, TEXAS* |

## *OPINION*

Susan Jackson Holden and Terry Holden appeal the trial court's judgment in favor of Charles Lyle Holden, Independent Executor of the Estate of Rosie Eunice Holden, deceased. They raise seven issues on appeal. We affirm in part, and reverse and render in part.

## BACKGROUND

Charles was married to Rosie. Terry is Charles's son from a previous marriage, and Susan is Terry's wife. Charles had a hip replacement in the fall of 2008, and Rosie had a variety of illnesses. In May 2009, Rosie was diagnosed with amyotrophic lateral sclerosis (ALS, also known as Lou Gehrig's Disease). Susan went to Rosie and Charles's home four to five times a week to provide care for Rosie. On the days that Susan was unable to take care of Rosie, Charles or a hospice organization provided care for her. Between May and November of 2009, Susan was Rosie's primary caregiver.[1]

---

[1] Charles claimed that he provided continual care for Rosie throughout this period, and that hospice played a minimal role in providing services to Rosie.

On July 13, 2009, Rosie executed an assignment of an oil and gas royalty interest to Terry. Susan obtained an assignment form, completed it, and presented it to Rosie. Susan and Terry paid nothing for the assignment, and Susan claimed that it was a gift.[2] On July 17, 2009, Rosie signed a medical power of attorney giving Susan the right to make all of Rosie's healthcare decisions. On August 5, 2009, Rosie executed a statutory durable power of attorney appointing Susan as her agent. That same day, Rosie also executed a revocation of all prior powers of attorney. Susan did not disclose any of these transactions to Charles. She believed that it was not appropriate to disclose the power of attorney because it would have started a family fight.

On August 10, 2009, Susan and Terry had an altercation with Charles concerning the care Susan provided Rosie, specifically that Susan had used too many of Rosie's colostomy bags. During the argument, Charles punched Terry in the face. On August 11, 2009, Susan and Terry went to Rosie and Charles's home to move Rosie to their home.[3] Prior to their arrival, Susan and Terry made an agreement and established a plan to remove Rosie from her home. Terry recorded the statutory durable power of attorney at the courthouse because he and Susan were concerned that Charles might not let them in the house. When Susan and Terry arrived, they told Charles for the first time that they were moving Rosie to their home, and revealed that Susan had obtained the power of attorney.[4] Rosie stated that she did not want to leave her home, but Susan told her she had to go with them.

On August 13, 2009, Susan opened a joint bank account with Rosie at Bank of America, using funds from a joint account held by Rosie and Charles. Susan stated that some of the money in the new account was used to pay Rosie's expenses for clothing, bedding, food, and related items. But she also stated that she and Terry used some of the money to pay for "household expenses to keep us going while we were taking care of her."

While Rosie stayed with Susan and Terry, Charles told Susan that he wanted to take Rosie home because she wanted to return home with him.[5] According to Charles, Susan refused, saying, "She's not going anywhere; I've got a power of attorney." Susan acknowledged that Rosie also

---

[2] According to Terry, he was unaware of the assignment until later.

[3] Charles believed that Susan and Terry moved Rosie to their home in July 2009.

[4] Representatives of Adult Protective Services were present during the relocation process, but the precise purpose of their visit is unclear in the record.

[5] Charles frequently visited Rosie while she lived with Susan and Terry.

mentioned to her that she wanted to return home. According to Susan, hospice and Adult Protective Services would not let Rosie return home.

Rosie's condition deteriorated and she died on November 8, 2009. Charles was appointed the independent executor of Rosie's estate. On September 15, 2010, Charles made a demand that Susan provide an accounting under Texas Estates Code Sections 751.101 through 751.106.[6] Susan did not respond to the demand, and Charles filed suit as the independent executor of Rosie's estate. In his petition, Charles sought to compel the accounting, to require Susan to return the funds that she obtained from Rosie, to rescind the royalty assignment, and to recover his attorney's fees.

During the bench trial, Susan admitted that she had not provided Charles with an accounting. After the parties rested, closed, and made final arguments, the trial court ordered that Susan provide the accounting within fourteen days.[7] The trial court also stated as follows:

> What the Court's going to do -- first of all, the Court wants compliance with 489B [now Texas Estates Code Sections 171.101-.106] in an account -- sworn accounting form that's required under the probate code. The accounts may be the raw data for it, but let's get it in a proper format that's sworn to and everything. And when that's done, the Court wants to see that; and I'm going to take the rest of the matter under advisement until I see it.
>
> . . . .
>
> I want an accounting that complies with 489B; and once I see that, I'll rule on your other issues.

Pursuant to the court's order, Susan timely provided the accounting after the trial. The documents included bank account summaries and transaction information. Charles filed a response and written objections to the accounting. Susan and Terry filed no further response and did not ask for a hearing on the accounting. Based on the information before it, the trial court rendered judgment against Susan and Terry awarding $25,587.73 in damages to Charles in his representative capacity, along with $5,000.00 in attorney's fees. At Susan and Terry's request, the trial court issued findings of fact and conclusions of law. This appeal followed.

---

[6] The demand was actually made under Section 489B of the Texas Probate Code, which has since been recodified in virtually identical language in the Texas Estates Code. *See* Act of June 15, 2001, 77th Leg., R.S., ch. 1056, § 1, 2001 Tex. Gen. Laws, 2336, 2336-37, *repealed by* Act of June 17 2011, 82nd Leg., R.S., ch. 823, § 1.01, 2011 Vernon's Sess. Law Serv. 1901, 1905 (current version at TEX. ESTATES CODE ANN. §§ 751.101-.106 (West 2014).

[7] There is no doubt that this was a full trial. At its conclusion, Charles argued for the relief he requested in the petition on each cause of action alleged, while Susan and Terry argued that the trial court should render a take nothing judgment against Charles.

<u>**DOCUMENTS NOT ADMITTED INTO EVIDENCE**</u>

In their second issue, Susan and Terry argue that the trial court erroneously considered the accounting and other financial documents, because they were not formally admitted into evidence.

<u>**Standard of Review and Applicable Law**</u>

"When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." TEX. R. CIV. P. 270. A trial court's decision to reopen the evidence will be disturbed on appeal only in those cases where it is shown that there has been a clear abuse of discretion. *Forrest v. Hanson*, 424 S.W.2d 899, 907 (Tex. 1968). The trial court's discretion is to be liberally exercised in the interest of justice so that all parties can fully develop their case. *Lifestyle Mobile Homes v. Ricks*, 653 S.W.2d 602, 604 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.). An appellate court reviews the trial court's decisions based on the evidence in the record before the trial court at the time it acted. *Lifeguard Benefit Servs., Inc. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 117 (Tex. App.—Fort Worth 2010, no pet.).

To present a complaint for appellate review, the record must show that (1) the complaint was presented to the trial court by a timely request, objection, or motion stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context; and (2) the trial court ruled on the request. TEX. R. APP. P. 33.1(a). To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method. *Dal-Chrome Co. v. Brenntag Sw., Inc.,* 183 S.W.3d 133, 144 (Tex. App.—Dallas 2006, no pet.). Moreover, a motion for new trial is a prerequisite to a complaint on appeal on which evidence must be heard. TEX. R. CIV. P. 324(b)(1).

<u>**Discussion**</u>

On September 17, 2012, the day of the trial, Susan and Terry provided Charles with information from one of Susan and Terry's joint accounts, a Compass Bank account. Two checks from that account were admitted into evidence, one to reimburse Charles for Rosie's cremation, and one to Charles for a royalty check received by Susan and Terry pursuant to the royalty assignment. Three days after the trial, and in compliance with the court's order, they provided the accounting. Susan and Terry contend that the trial court erroneously relied on the accounting and bank documents because they were received by the court after the close of evidence, are outside

4

the record, and "no testimony was taken in regards to these documents, how the money was spent, who spent such money or what was the intent of the parties." Without the evidence, their argument continues, there is insufficient evidence to support the trial court's award of $25,587.73.

Charles filed a response to the accounting on September 25, 2012, and a brief in support of his request for judgment on October 16, 2012. To this response, Charles attached a copy of the Compass Bank information Susan and Terry produced at trial. The trial court sent a letter informing the parties of its rulings on January 22, 2013, and signed a formal judgment on February 22, 2013. Susan and Terry filed a request for findings of fact and conclusions of law on March 13, 2013. The trial court signed the findings and conclusions eight days later.

At no time during this period did Susan and Terry file a reply to Charles's response, ask for a hearing, or otherwise challenge Charles's response to the accounting, or his inclusion of the Compass Bank documents. Even after learning of the judgment, Susan and Terry did not file a motion for new trial or otherwise make the trial court aware of their complaints concerning its consideration of this evidence. It is clear from the findings of fact and conclusions of law that the trial court considered the accounting, the supporting documentation, and the Compass Bank documents. The trial court informed the parties prior to the order for an accounting that it would rule on all other issues after it received and reviewed the accounting. Therefore, Susan and Terry were not surprised by the court's consideration of the evidence.

With regard to Susan and Terry's contention that the trial court should have allowed them to submit evidence to further explain the transactions, a motion for new trial is a prerequisite to appeal for complaints on which evidence must be heard. *See* TEX. R. CIV. P. 324(b)(1); TEX. R. APP. P. 33.1(a); *Dal-Chrome Co.,* 183 S.W.3d at 144 (party must inform trial court of complaint of error in judgment by motion for new trial or similar method). Susan and Terry filed no motion for new trial or otherwise notified the court of their complaint.[8]

Finally, although the proceedings transpired in an unusual fashion, the trial court could have considered the evidence under Texas Rule of Civil Procedure 270. Susan and Terry note that Charles did not move to reopen the evidence after the hearing. However, Rule 270 states that the trial court may consider new evidence at any time if necessary in the interest of justice in a bench

---

[8] Because Susan and Terry raise it as part of this issue, we address their contention here that the trial court should have allowed them to present evidence on the accounting. Later in this opinion, we separately address their issue concerning the sufficiency of the evidence supporting the trial court's award of $25,587.73 based on the evidence before it (i.e. the testimony and other evidence admitted at trial, along with the accounting and supporting documentation produced after trial).

trial. *See* TEX. R. CIV. P. 270. The language of the rule does not require a motion by a party, nor have we discovered authority preventing a trial court from reopening the evidence sua sponte. Rather, the courts addressing this issue have held that the trial court may reopen the evidence on its own motion. *See, e.g., Matter of J.A.W.*, 976 S.W.2d 260, 263-64 (Tex. App.—San Antonio 1998, no pet.) (holding trial court could reopen evidence sua sponte under Rule 270 to consider detention report after evidence closed in juvenile justice proceeding). We agree with the reasoning in those cases. In any event, by failing to make the trial court aware of their complaint, Susan and Terry have waived their challenge to the trial court's consideration of the evidence. *See In re K.E.*, No. 07-13-00082-CV, 2013 WL 4733999, at *2-3 (Tex. App.—Amarillo Aug. 30, 2013, no pet.) (mem. op.) (holding appellant failed to preserve issue that trial court sua sponte considered evidence it received posttrial after parties rested and closed evidence when she raised issue for first time on appeal).

Susan and Terry's second issue is overruled.

## PLEADING ISSUES

In their first issue, Susan and Terry contend that Charles pleaded for an order seeking an accounting, rescission of the royalty assignment, and attorney's fees. They argue that he did not plead for monetary relief, and without a pleading to support the award, the trial court erred when it awarded $25,587.73 in damages. In their fifth issue, Susan and Terry argue that Charles did not plead a breach of fiduciary duty claim, and consequently, the trial court erred in concluding that Susan breached her fiduciary duty. Because these issues concern the adequacy of Charles's pleadings, we address them together.

### Standard of Review and Applicable Law

A court's jurisdiction to render judgment is invoked by the pleadings, and a judgment unsupported by the pleadings is void. *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.). Therefore, a trial court's judgment must conform to the pleadings. TEX. R. CIV. P. 301. A plaintiff may not be granted a favorable judgment on an unpleaded cause of action, absent trial by consent. *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 18 (Tex. App.—El Paso 2005, pet. denied) (citing *Oil Field Haulers Ass'n v. R.R. Comm'n*, 381 S.W.2d 183, 191 (Tex. 1964)); *see also Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent.");

*Huddleston v. Pace*, 790 S.W.2d 47, 50 (Tex. App.—San Antonio 1990, writ denied) ("A party must recover on the right in which he sues and upon proof of the facts stated in his pleadings, and he cannot recover through a right not asserted.").

A plaintiff's petition must give adequate notice of the facts upon which the plaintiff bases his cause of action. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). The purpose of this rule is to provide the defendant with sufficient information to prepare a defense. *Id.* A reviewing court should liberally construe the plaintiff's petition to assert any claim that could reasonably be inferred from the specific language in the petition. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). However, a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Id.*; *see* TEX. R. CIV. P. 47; *Krull v. Somoza*, 879 S.W.2d 320, 322 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

An issue is tried by consent when both parties present evidence on an issue and the issue is developed during trial without objection. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). Trial by consent is a doctrine that is intended to cover only the exceptional case in which it clearly appears from the record as a whole that the parties tried the unpleaded issue; it is not intended to establish a general rule of practice and should be applied with care. *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue. *Hartford Fire Ins. Co.*, 287 S.W.3d at 780. A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Pine Trail Shores Owners' Ass'n, Inc. v. Aiken*, 160 S.W.3d 139, 146 (Tex. App.—Tyler 2005, no pet.); *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 719 (Tex. App.—Dallas 2004, no pet.). However, an issue is not tried by consent if the evidence relevant to that issue is also relevant to other issues raised by the pleadings. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 446 (Tex. 1993). A party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. *See Hartford Fire Ins. Co.*, 287 S.W.3d at 780. An issue may be tried by consent in a bench trial. *See Paint Rock Operating, LLC v. Chisholm Exploration, Inc.*, 339 S.W.3d 771, 774-75 (Tex App.—Eastland 2011, no pet.).

**Discussion**

Charles, in his petition, seeks to compel an accounting, rescind the royalty assignment because of undue influence or fraud and conspiracy to commit undue influence, and recover attorney's fees for the accounting. Charles's petition contained the following allegations pertaining to the accounting:

> Pursuant to Texas Probate Code § 489B(g) [now TEX. ESTATES CODE ANN. §§ 751.101-.106], Plaintiff asks this Court to compel Defendant, Susan J. Holden, to promptly and fully answer the demand for an accounting and to immediately surrender to Plaintiff all funds and other property belonging to the Estate of Rosie Eunice Holden of which Defendant is aware or of which is in her control or possession or of which she has previously taken possession or exercised control over.

In relevant part, the trial court made the following conclusions of law:

1. Under *Texas Prob. Code Ann. § 489B(a)*, Susan owed Rosie a fiduciary duty as her agent under the power of attorney.
2. Susan breached this fiduciary duty owed to Rosie because she failed to:
   a. Timely inform the principal of all actions taken pursuant to the power of attorney;
   b. Maintain records of all transactions on the agent;
   c. Account to the principal; and
   d. Not engage in self-dealing.
3. Susan & Terry took $25,587.73 from Rosie. This amount includes all monies they received from Rosie.
4. Susan & Terry should reimburse Rosie's estate the total amount of $25,587.73.

Charles's petition contains no allegation that Susan or Terry misappropriated Rosie's funds, or otherwise engaged in self-dealing. Rather, in pertinent part, he asks for the accounting, plus Rosie's assets that remain in Susan's possession or control or of which she has previously taken possession or exercised control. The language of the accounting statute authorizes turnover of the assets remaining in the control of the agent, but it does not address the return of assets that have been spent on the agent's personal expenses as a result of her self-dealing. *See* TEX. ESTATES CODE ANN. § 751.105. To recover those funds, it is necessary to plead a claim for breach of fiduciary duty, fraud, or other similar claim. *See Moneyhon*, 278 S.W.3d at 879 (breach of fiduciary duty recoverable if pleaded or tried by consent); *In re Estate of Miller*, 446 S.W.3d 445, 453-56 (Tex. App.—Tyler 2014, no pet.) (describing legal standards for recovery of breach of fiduciary duty to refrain from self-dealing in statutory durable power of attorney context).

Although Charles's petition requests the return of all Rosie's funds over which Susan has ever taken possession or exercised control, there are no facts alleged or theories pleaded to support the claim that Susan breached her fiduciary duty to refrain from self-dealing. In other words, the pleading notifies Susan and Terry that they seek return of all of Rosie's funds, but it does not put

them on notice of the basis of the claim. The only allegations in the petition related to any tort claim pertain to the undue influence, fraud, and conspiracy claims seeking rescission of the royalty assignment. There are no factual allegations in the petition that Susan disposed of Rosie's funds for Susan and Terry's personal expenses.

Charles failed to plead a claim for breach of Susan's fiduciary duty to refrain from self-dealing, but the claim is treated as if he pleaded it when there is evidence of trial of the issue by express or implied consent. *See* TEX. R. CIV. P. 67; ***Roark v. Stallworth Oil & Gas, Inc.***, 813 S.W.2d 492, 495 (Tex. 1991). Susan and Terry provided the accounting as they were ordered to do, and the information contained in the accounting formed the basis of the breach of the fiduciary duty claim. The information contained in the accounting was relevant only to that claim, and not the undue influence claim. This is because the undue influence claim pertains only to the royalty assignment, which Susan procured prior to executing the statutory durable power of attorney and obtaining access to Rosie's funds.

Furthermore, despite the peculiar procedural posture of this case, the circumstances indicate that the parties were aware that Susan's breach of fiduciary duty was an issue in the case. Susan and Terry became aware that Susan's disposition of Rosie's funds for their personal expenses was actually tried, although in an unusual fashion. Charles's counsel mentioned in his opening statement that "a part of our cause of action is a petition to do this accounting so we can make a determination if the money was used in the correct manner." During the trial, albeit as a result of the trial court's questioning, Susan admitted using Rosie's funds for personal expenses. Specifically, the trial court and Susan had the following discussion:

> THE COURT: All right. And how much money went into that account? Do you recall?
>
> THE WITNESS: Approximately $10,300.
>
> THE COURT: And what was it spent on?
>
> THE WITNESS: It was spent on clothes for her. It was spent on bedding. It was spent on food. She spent some of it herself. It was spent on household expenses to keep us going while we were taking care of her.

Once it was admitted in closing argument that Susan failed to provide the accounting, the trial court indicated that it would "rule on [their] other issues" after the accounting was completed. Susan and Terry did not object to the trial court's consideration of the accounting as evidence. At that point in the proceedings, relevant evidence had been admitted on the claim. Susan and Terry

9

should have known then that the fiduciary duty issue was before the court. Even if they did not, they became aware of it after completing the accounting and filing it with the court. Charles filed objections to the accounting and pointed out that a significant portion of Rosie's funds were used for Susan and Terry's personal expenses. Also, Charles filed a motion to enter judgment and a supporting brief, specifically analyzing the financial documents in the accounting, which showed that Susan and Terry used the funds improperly.

Moreover, it was clear that the trial court would rely on this documentary evidence in rendering its judgment when it indicated it would rule on the remaining issues after receiving the accounting. The trial court also indicated its reliance on this evidence in its judgment and its findings of fact and conclusions of law, which Susan and Terry requested, when it found that Susan breached her fiduciary duty to refrain from self-dealing. Yet, Susan and Terry remained silent, despite Charles's objections to the accounting, his motion to enter judgment, the trial court's judgment, and its findings of fact and conclusions of law. They filed no motion for new trial or other complaint that Charles failed to plead the claim, although they knew that the trial court relied on this evidence. *Cf.* **Cont'l Homes of Texas, L.P. v. City of San Antonio**, 275 S.W.3d 9, 16-17 (Tex. App.—San Antonio 2008, pet. denied) (holding parties did not try by consent affirmative defense raised for first time at posttrial hearing on motion to enter judgment, because after court issued findings of fact and conclusions of law in which it became apparent trial court relied on unpleaded defense, aggrieved party filed motion for new trial complaining of pleading defect).

We hold that the breach of fiduciary duty claim to recover monetary damages for Susan's self-dealing was tried by consent and that Susan and Terry's complaint that the pleading is defective was waived by failing to object to the trial of that issue until this appeal. *See* **Hartford Fire Ins. Co.**, 287 S.W.3d at 780; **Johnson**, 148 S.W.3d at 719 (holding issue tried by consent that was addressed in posttrial briefs and ruled on by trial court).

Susan and Terry's first and fifth issues are overruled.

## DUE PROCESS

In their third issue, Susan and Terry contend that the trial court violated their due process rights when it failed to provide them with the opportunity to provide testimony regarding the accounting.

It is settled that constitutional issues, such as due process claims, must be properly raised in the trial court or they are waived on appeal. **Dreyer v. Greene**, 871 S.W.2d 697, 698 (Tex. 1993).

Susan and Terry never raised the due process issue in the trial court and do so for the first time on appeal. Consequently, they waived this issue.

Susan and Terry's third issue is overruled.

**SUFFICIENCY OF THE EVIDENCE**

In their fourth issue, Susan and Terry argue that the evidence is insufficient to support the trial court's order that they return $25,587.73 to Charles as executor of Rosie's estate.[9] Also as part of their fourth issue, Susan and Terry implicitly argue that there is no basis to award joint and several liability against them. In Susan and Terry's sixth issue, they argue that the trial court erred in rescinding the royalty assignment because Charles failed to present sufficient evidence that they procured the assignment by undue influence. In their seventh issue, Susan and Terry contend that the trial court erred in rescinding the assignment because Charles failed to present sufficient evidence that they conspired to force Rosie to execute the assignment.

**Standard of Review**

When, as in this case, specific findings of fact and conclusions of law are filed and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Rus–Ann Dev., Inc. v. ECGC, Inc.,* 222 S.W.3d 921, 925 (Tex. App.—Tyler 2007, no pet.). Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Main Place Custom Homes, Inc. v. Honaker,* 192 S.W.3d 604, 614 (Tex. App.—Fort Worth 2006, pet. denied).

We review a trial court's conclusions of law de novo. *State v. Heal,* 917 S.W.2d 6, 9 (Tex. 1996); *Potcinske v. McDonald Prop. Inv., Ltd.,* 245 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Sembera v. Petrofac Tyler, Inc.,* 253 S.W.3d 815, 822 (Tex. App.—

---

[9] In their brief, Susan and Terry's fourth issue presumes that the accounting and supporting financial documents are not proper evidence. Thus, their argument continues, the evidence is insufficient to support the monetary award of $25,587.73. In their reply brief, they challenge the amounts awarded as a whole, but do not attempt to argue that individual withdrawals from the accounts were properly spent for Rosie's benefit.

Tyler 2008, pet. denied). To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Potcinske,* 245 S.W.3d at 529.

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Bright v. Addison,* 171 S.W.3d 588, 595 (Tex. App.—Dallas 2005, pet. denied). When reviewing a "no evidence" issue, we determine "whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.*

If a party is attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). In addressing a factual sufficiency of the evidence challenge, we must consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See Canal Ins. Co. v. Hopkins,* 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet. denied) (citing *City of Keller,* 168 S.W.3d at 819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Accordingly, we must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. *Id.*

Moreover, it is within the finder of fact's province to resolve conflicts in the evidence. *Canal,* 238 S.W.3d at 557 (citing *City of Keller,* 168 S.W.3d at 820). Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where a reasonable finder of fact could resolve conflicting evidence either way, we must presume the finder of fact did so in favor of the findings. *Id.* Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.*

**Order to Return Rosie's Funds (Fourth Issue)**

The trial court concluded Susan owed Rosie a fiduciary duty as her agent under the power of attorney pursuant to the relevant sections of the Texas Estates Code. The trial court also concluded that Susan breached this duty because she failed to (1) timely inform Rosie of all actions taken pursuant to the power of attorney, (2) maintain records of all transactions, (3) account to the principal, and (4) refrain from self-dealing. The trial court went on to conclude that Susan and Terry "took $25,587.73 from Rosie." Further, the court also stated that "[t]his amount includes all monies they received from Rosie" and the trial court ordered that they reimburse Rosie's estate in that amount.[10]

The basis for the trial court's decision is the accounting and the Compass Bank account information. As part of the accounting, Susan produced transaction summaries and bank statements on two Bank of America (BOA) accounts. The first BOA account was the joint account held by Susan and Rosie that was opened on August 13, 2009. The deposits into this account ($9,643.62) were from Rosie's funds only. At trial, Susan admitted that she used these funds, at least in part, for her and Terry's personal expenses. In Susan's account summary, she admits that several payments from this account were for their personal expenses. For instance, she made a "shop pmt" that appears to be for their personal business, as well as a payment for their personal real estate taxes. There were also cash withdrawals left unexplained by the summaries.

On October 28, 2009, when Rosie was near death, Susan created a second BOA account. The account appears to be Susan's account, with Terry designated as the payable on death (POD) beneficiary. Into this account, Susan deposited a total of $5,457.33, which included the balance of her joint account with Rosie ($3,719.20), Rosie's social security check ($714.00), the royalty check ($918.62) Susan and Terry received after the royalty assignment, and funds from an unknown source ($105.51). Susan's summary for this account shows that she paid her and Terry's personal mortgage and utility bills from these funds. It also shows that she paid their sales tax for the "shop" to the comptroller's office. According to Susan's summary, she paid Terry's personal medical bills, and various other expenses such as their groceries, gas, and restaurant trips, a liquor store bill, and other miscellaneous personal expenses that they incurred after Rosie's death. Furthermore, the summary lists several expenses that are unexplained. For example, Susan

---

[10] Other than relying on the failure to plead the cause of action, Susan and Terry do not challenge the conclusion that Susan breached her fiduciary duty.

withdrew $1,000.00 for "reimb – misc," but did not explain the basis for the reimbursement. She also stated in the notes for several expenses that she "doesn't recall" the nature of the expenses.

Susan transferred the amount of the royalty check from the second BOA account to the Compass Bank account. It appears from the record that this account was a joint account that Susan and Terry held prior to, during, and after the events giving rise to this suit. She then wrote a check to Charles for the royalty. A lis pendens affecting the royalty interest was filed after Charles made a demand for an accounting. Susan also wrote a check to Charles from this account for Rosie's cremation. From the record, it does not appear that Charles cashed either check.

The trial court awarded the total amount deposited into all three accounts during the relevant period. Specifically, the trial court awarded $9,643.62 for the amounts deposited into Susan and Rosie's joint BOA account, $4,433.20 for the amounts deposited into Susan and Terry's POD account at BOA prior to Rosie's death, and $11,510.91 for the amounts deposited into Susan and Terry's joint Compass Bank account, for a total of $25,587.73.

The trial court could have reasonably concluded that Susan failed to discharge her duties under the Texas Estates Code and ordered that the funds be returned to Rosie's estate. Additionally, the trial court could have properly ordered that $9,643.62 be returned from Susan and Rosie's joint account.

As to the second BOA account, the trial court ordered that $4,433.20 be returned to Rosie's estate.[11] However, the initial deposit into this account, $3,719.20, came from Susan and Rosie's joint BOA account. The trial court could not award that amount for both the first and the second account, because that would result in a double recovery of those funds. Therefore, the evidence is insufficient to support the trial court's award of $4,433.20 for the second BOA account. Rather, the evidence is sufficient to support only the trial court's award of the $714.00 deposit of Rosie's social security check to that account.[12]

As to the Compass Bank account, with the exception of the amount of the royalty check, none of the deposits into that account match the amounts withdrawn from the BOA accounts. As

---

[11] In the second BOA account, the trial court awarded the initial deposit ($3,719.20) and Rosie's social security check ($714.00), but did not award the funds from the unknown source ($105.51). The trial court did also did not award the amount of the royalty check ($918.62) from this account, but separately ordered in its judgment that all income from the royalty assignment be repaid to Rosie's estate.

[12] The remaining $105.51 deposited in the second BOA account could be recoverable, but the trial court did not award it, and Charles does not contend that Rosie's estate is entitled to the amount of that deposit.

we have stated, the trial court ordered in its judgment that all amounts received from the royalty interest be returned to Rosie's estate. Therefore, the evidence is sufficient to support the order to return $918.62 from this account to Charles as executor of Rosie's estate. There is no evidence to support remaining portion of the award of from this account ($10,592.29).[13]

In summary, we hold that the trial court could have reasonably determined that Susan failed to discharge her duties under the Texas Estates Code, and that she breached her fiduciary duty to refrain from self-dealing. However, there is insufficient evidence to support the full amount awarded by the trial court. The total amount that must be returned to Rosie's estate is $11,276.24, which represents the total amount of deposits from the first BOA joint account between Rosie and Susan for $9,643.62, plus $714.00 from the second BOA account between Susan and Terry, along with $918.62, representing the amount for the royalty check deposited into the Compass Bank account.

We sustain in part and overrule in part the portion of Susan and Terry's fourth issue pertaining to the sufficiency of the evidence supporting the damages award.

## Undue Influence (Sixth Issue)

Undue influence requires (1) the existence and exertion of an influence, (2) the effective operation of such influence so as to subvert or overpower the mind of the maker of the document at the time of execution of the document, and (3) the execution of the document, which the maker thereof would not have executed but for such influence. *See In re Estate of Woods*, 542 S.W.2d 845, 847 (Tex. 1976); *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Thus, to establish undue influence in this case, Charles must prove that Susan exercised such dominion and control over Rosie's mind, under the facts and circumstances then existing, that Susan overcame Rosie's free will and caused her to execute the royalty assignment, which she otherwise would not have done. *See Dubree v. Blackwell*, 67 S.W.3d 286, 291 (Tex. App.—Amarillo 2001, no pet.).

The Texas Supreme Court has observed that "every case of undue influence must be decided on its own peculiar facts." *Pearce v. Cross*, 414 S.W.2d 457, 462 (Tex. 1966) (citing *Rothermel,* 369 S.W.2d at 922). Among other factors, courts consider the following:

(1) the circumstances surrounding execution of the instrument;

(2) the relationship between the grantor and the grantee;

---

[13] As we have stated, besides the royalty check written to Charles, a check written to Charles for Rosie's cremation appears to be the only expense from the Compass account related to this case. But Charles has not cashed the check, and he is not entitled to that amount because the evidence does not show that any of Rosie's funds were deposited into this account.

(3) the motive, character, and conduct of the persons benefitted by the instrument;

(4) the participation by the beneficiary in the preparation or execution of the instrument;

(5) the words and acts of the parties;

(6) the interest in and opportunity for the exercise of undue influence;

(7) the physical and mental condition of the grantor at the time of the instrument's execution, including the extent to which she was dependent upon and subject to the control of the grantee; and

(8) the improvidence of the transaction by reason of unjust, unreasonable, or unnatural disposition of the property.

*See* **Guthrie v. Suiter**, 934 S.W.2d 820, 831 (Tex. App.—Houston [1st Dist.] 1996, no writ). Proof of undue influence may be established by circumstantial evidence, but must be probative of the issue and not merely create a surmise or suspicion that such influence existed at the time the document was executed. **Rothermel**, 369 S.W.2d at 922; **Reynolds v. Park**, 485 S.W.2d 807, 813 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.). Undue influence cannot be inferred by opportunity alone because "[t]here must be some evidence to show that the influence was not only present, but [that it was] in fact exerted with respect to the [execution of the document] itself." **Cotten v. Cotten**, 169 S.W.3d 824, 827 (Tex. App.—Dallas 2005, pet. denied). "The circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence." **In re Estate of Steed**, 152 S.W.3d 797, 810 (Tex. App.—Texarkana 2004, pet. denied). *Inter vivos* transactions where one party exerts undue influence to procure a mineral deed can support an undue influence claim. **Rodriguez v. Garcia**, 519 S.W.2d 908, 912 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.).

Susan is Rosie's daughter-in-law. At the time Rosie executed the assignment, Susan was her primary caregiver. The trial court found that Rosie was in a state of significant physical and mental distress and was close to death. She had several illnesses, and had been diagnosed with ALS. The revenue from the royalty interest was significant. Susan located the assignment form, completed it, and presented it to Rosie for her signature. Susan's husband, Terry, was the assignee. The record demonstrates that Susan did not disclose the transaction to anyone, including Terry, until she attempted to move Rosie from her home. Shortly after engaging in this transaction, Susan obtained the statutory durable power of attorney and the medical power of attorney from Rosie. The trial court could have reasonably concluded that Susan systematically

gained complete control of Rosie's assets and well-being, even though Rosie did not want to leave her home or remain with Susan and Terry. Additionally, the trial court could have reasonably concluded that, based on these circumstances, Susan effectively exercised such dominion and control over Rosie so as to overpower Rosie's free will, causing her to execute the royalty assignment when she would not have ordinarily done so.

However, the evidence is insufficient to support the finding that Terry exercised undue influence to obtain the assignment. The record demonstrates that Susan acted on her own in obtaining the royalty assignment, and that Terry was unaware that the assignment existed until Susan disclosed it after the altercation with Charles but prior to their removing Rosie from their home.

Susan and Terry's sixth issue is sustained as to Terry and overruled as to Susan.

## Conspiracy (Seventh Issue)

To establish a civil conspiracy, one must prove the following: (1) a combination of two or more persons; (2) an object to be accomplished (either an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy is considered a derivative tort because a defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996); *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

"[P]roof of a conspiracy must usually be made by circumstantial evidence." *Paschal v. Great W. Drilling, Ltd.,* 215 S.W.3d 437, 453 (Tex. App.—Eastland 2006, pet. denied) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex. 1968)). "Inferences of concerted action may be drawn from joint participation in the transactions and from enjoyment of the fruits of the transactions." *Id.* (citing *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 582 (Tex. 1963)); *see also Lesikar v. Rappeport,* 33 S.W.3d 282, 302 (Tex. App.—Texarkana 2000, pet. denied). As to the element of an unlawful, overt act, a cause of action for conspiracy may be based on a breach of fiduciary duty. *See Lesikar,* 33 S.W.3d at 302 ("Types of torts or unlawful acts on which a cause of action for conspiracy may be based include breach of a fiduciary duty."). To prevail on a claim for breach of fiduciary duty, a plaintiff must prove the existence of the fiduciary relationship and a breach of that duty by the

17

defendant that caused damages to the plaintiff. ***Beck v. Law Offices of Edwin J. Terry, Jr., P.C.,*** 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.).

"Once a conspiracy is proven, each conspirator is responsible for all acts done by any of the conspirators in furtherance of the conspiracy." ***Paschal***, 215 S.W.3d at 451 (citing ***Carroll v. Timmers Chevrolet, Inc.,*** 592 S.W.2d 922, 926 (Tex. 1979)). Here, the evidence established that Susan had a fiduciary duty to Rosie as Rosie's agent pursuant to the power of attorney. *See* ***Tex. Bank & Trust Co. v. Moore,*** 595 S.W.2d 502, 507, 510 (Tex. 1980) (person with fiduciary duty may not use position to self-deal); ***Plummer v. Estate of Plummer,*** 51 S.W.3d 840, 842 (Tex. App.—Texarkana 2001, pet. denied) ("A power of attorney creates an agency relationship, and an agent owes a fiduciary duty to its principal with respect to matters within the scope of its agency."). The parties do not dispute that Susan breached her duties; they question only whether the claims were properly pleaded. We have already disposed of that issue.

There is no evidence that Terry and Susan conspired to obtain the royalty assignment. The record demonstrates that Susan completed the assignment form and presented it to Rosie. The assignment was made to Terry, but the record shows that Terry first learned about the assignment after the altercation with Charles. He and Susan discussed whether they would be able to return to Charles and Rosie's home after the altercation. Susan then disclosed to Terry that she had the statutory durable power of attorney, the medical power of attorney, and royalty assignment. There is no evidence that they had received any royalty payments at that time. Consequently, the trial court erroneously concluded that Susan and Terry conspired to obtain the assignment.[14]

Susan and Terry's seventh issue is sustained.

## Joint and Several Liability (Fourth Issue)

The trial court separately concluded that "Susan and Terry took $25,587.73 from Rosie," and that they are "jointly and severally liable for all monetary damages in this case." Apart from the actual amount awarded, the trial court could have reasonably reached this conclusion. When Susan disclosed to Terry that she had engaged in these transactions, they agreed to use the power of attorney if necessary to relocate Rosie to their home. They agreed that Terry would record the documents at the courthouse, an agreement and act in furtherance of the conspiracy. Terry agreed to take part in removing Rosie from her home. The court could have reasonably concluded, as factfinder, that once they removed Rosie from her home, Susan and Terry began to obtain her cash

---

[14] Because the trial court could have reasonably concluded Susan exercised undue influence in procuring the assignment, rescission is still a proper remedy.

and use it for their personal benefit. The two BOA accounts were not opened until after they relocated Rosie to their home. The accounting demonstrates that Susan and Terry personally benefitted from Susan's actions. Susan made payments with Rosie's money for the benefit of their business, and for their personal mortgage, real estate taxes, and utility bills, as well as Terry's personal medical bills. And, based on these circumstances, the trial court could have reasonably concluded that the other expenses incurred, such as meals and gasoline, directly or indirectly benefitted Terry.

The remainder of Susan and Terry's fourth issue is overruled.

### DISPOSITION

We have sustained Susan and Terry's fourth issue in part, their seventh issue, and their sixth issue with respect to Terry, and overruled their remaining issues. Accordingly, we *reverse* the trial court's judgment and *render* judgment that Susan and Terry are ordered to return $11,276.24 instead of $25,587.73 to Charles as independent executor of Rosie's estate. We *affirm* the trial court's judgment in all other respects.

JAMES T. WORTHEN
Chief Justice

Opinion delivered January 21, 2015.
*Panel consisted of Worthen, C.J. and Hoyle, J.*

(PUBLISH)

19



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JANUARY 21, 2015

NO. 12-13-00165-CV

**SUSAN JACKSON HOLDEN AND TERRY HOLDEN,**
Appellants
V.
**CHARLES LYLE HOLDEN, AS INDEPENDENT EXECUTOR OF
THE ESTATE OF ROSIE EUNICE HOLDEN, DECEASED,**
Appellee

Appeal from the 354th District Court

of Rains County, Texas (Tr.Ct.No. 9,140)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment as entered by the trial court, and that the same should be affirmed in part and reversed and rendered in part.

It is ORDERED, ADJUDGED and DECREED by this court that the portion of the trial court's judgment awarding $25,587.73 in damages to **CHARLES LYLE HOLDEN, AS INDEPENDENT EXECUTOR OF THE ESTATE OF ROSIE EUNICE HOLDEN, DECEASED** is **reversed** and judgment **rendered** instead in the amount of $11,276.24; that in all other respects, the judgment of the trial court is **affirmed** in accordance with the opinion of the court; that all costs of this appeal are hereby assessed equally amongst the parties; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J. and Hoyle, J.*