ACCEPTED
03-14-00117-CV
5443800
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 10:17:25 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00117-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 10:17:25 PM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS FOR THE THIRD COURT OF APPEALS DISTRICT OF TEXAS AT AUSTIN

### NASH JESUS GONZALES AND GONZALES & GONZALES, P.C.,

### APPELLANTS

### v.

### MARISSA ANN GONZALES,

### APPELLEES

From the 200th District Court , Travis County Texas
The Honorable Lora J. Livingston, Presiding
Trial Court No. D-1-FM-11-005140

### NASH JESUS GONZALES AND GONZALES & GONZALES, P.C.'S APPELLANTS' REPLY BRIEF

| | |
|---|---|
| **Thomas B. Cowart** | **Wasoff & Cowart, P.L.L.C.** |
| **Texas Bar No. 00787295** | **100 North Central Expressway, Suite 901** |
| **tom@tcowart.com** | **Richardson, Texas 75080** |
| | **Tel: (214) 692-9700** |
| | **Fax: (214) 550-2674** |

**Attorneys for Appellants Nash Jesus Gonzales
and Gonzales & Gonzales, P.C.**

### ORAL ARGUMENT REQUESTED

### May 27, 2015

# TABLE OF CONTENTS

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Summary of Argument in Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument in Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.       The jury's verdict is not supported by the evidence.. . . . . . . . . . . . . . . . . 2

         A.       The jury's "latitude" is limited by the evidence.. . . . . . . . . . . . . . . . 2

         B.       Appellee's invitation to base the Court's decision on an
                  improperly dismembered Record should be rejected.. . . . . . . . . . . . 4

II.      Appellee's defense of the Trial Court's division of the contingent fee
         interest is based on a strained reading of the evidence and proceedings
         before the Trial Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         A.       To get to Appellee's reading of the June 19, 2012 letter to the
                  clients, the Court must improperly read the letter through a
                  technical, attorney prism.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         B.       There was no "winding up" of the Partnership at the final hearing
                  or, if it was considered, the relief requested was denied. . . . . . . . . . 14

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# INDEX OF AUTHORITIES

**Cases**                                                                          **Page Nos.**

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Deinhart v. McGrath-Stroatman*,
    2010 WL 4595708 (Tex. App.–Austin 2010, pet. denied). . . . . . . . . . . . . . . . 2

*Falk & Fish, L.L.P. v. Pinkston's Lawnmower and Equipment, Inc.*,
    317 S.W.3d 523 (Tex. App.–Dallas 2010, no pet.). . . . . . . . . . . . . . . . . . . . 12

*Gillen v. Williams Bros. Const. Co.*,
    933 S.W.2d 162 (Tex. App.–Houston [14th Dist.] 1996, writ denied).. . . . . . . . 3

*Holden v. Holden*,
    456 S.W.3d 642 (Tex. App.–Tyler 2015, no pet.). . . . . . . . . . . . . . . . . . . . 14

*Lenz v. Lenz*,
    79 S.W.3d 10 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Royden v. Ardoin*,
    331 S.W.2d 206 (Tex. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Yasin v. Yasin*,
    2011 WL 5009895 (Tex. App.–Austin 2011, no pet.).. . . . . . . . . . . . . . . . . . 2

## SUMMARY OF ARGUMENT IN REPLY

To defend the jury's verdict on the geographic restriction on the primary residence of the children in this matter, Appellee relies on two theories, neither or which stand up under even the most surface examination. First, Appellee essentially argues that the jury's discretion is so wide that review is unavailable. This, however, is directly contrary to established law allowing for review of the evidentiary support for the jury's verdict on geographic restrictions in family law cases. Secondly, Appellee argues that the evidence supports the claim that a "move" was in the best interest of the children and so the jury's verdict permitting a "move" is proper. This argument, though, relies on taking the evidence completely out of context, something this Court may not do.

Her defense of the Trial Court's division of the contingency fee interests in the Partnership's former cases suffers from similar defects. Contrary to the requirement that the June 19, 2012 letter be read as a reasonable person would, she urges the Court to apply a lawyer's technical reading of the letter to arrive at the conclusion she seeks, a conclusion that would undoubtedly be completely surprising to the reasonable client. And she urges the Court to indulge an assumption of action by the Trial Court that has no foundation in the record and, in fact, is contrary to the judgment actually rendered below. Nothing advanced by Appellee excuses the Trial

Court's error in reaching out beyond the proper bounds to include the contingency fee interests in the community estate.

## ARGUMENT IN REPLY

There are two areas in the Trial Court's judgment being challenged here. Each will be analyzed in turn.

### I.  The jury's verdict is not supported by the evidence

Appellee presents two primary defense to the challenge to the evidentiary support for the jury's verdict. First, Appellee argues essentially that the jury's discretion is so wide on the issue as to make evidentiary review inappropriate. Second, Appellee argues that a truncated reading of the evidence supports the verdict. Neither of these theories are valid.

### A.  The jury's "latitude" is limited by the evidence

Appellee first argues that the jury has discretion to simply pick any restriction it finds appropriate under the statute and the form of the jury charge. This claim, though, misses this point. Mr. Gonzales does not complain about the form of the jury charge or the use of the Pattern Jury Charge in this matter. He contends that the jury's verdict is not supported by the evidence, a requirement recognized by the Supreme Court and this Court in this context. *Lenz v. Lenz*, 79 S.W.3d 10, 19 -21 (Tex. 2002); *Deinhart v. McGrath-Stroatman*, 2010 WL 4595708, 5-8 (Tex. App.–Austin 2010, pet. denied); *see also Yasin v. Yasin*, 2011 WL 5009895 (Tex.

App.–Austin 2011, no pet.). The arguments advanced by Appellee based on the form of the charge are red herrings that should not distract the Court.

Similarly, Mr. Gonzales does not complain about the Trial Court's response to the jury's question, cited by Appellee. Again, he contends that the jury's verdict is not supported by the evidence, a wholly separate issue. To the extent that the Trial Court's response to the jury is relevant, the absence of a Reporter's Record reflecting the proceedings surrounding the note constitutes a "lost or destroyed" record. *See Gillen v. Williams Bros. Const. Co.*, 933 S.W.2d 162, 163 (Tex. App.–Houston [14th Dist.] 1996, writ denied). Mr. Gonzales timely made a request for the Reporter's Record to be prepared and filed in this matter (CR 743, 760). In addition, the Trial Court indicated that the Court Reporter would report the trial proceedings, subject to certain exceptions not applicable here, (III RR 38, 47-48) and the Trial Court's judgment (the Amended/Corrected Final Decree of Divorce) reflects that the proceedings were reported by the "Official Court Reporter" (CR 679). Thus, if the Court were to find that the Trial Court's response to the jury's question is relevant to the determination of the sufficiency of the evidence, the omission from the record of the proceedings surrounding that response mandates that the Trial Court's judgment be set aside and a new trial ordered.[1] TEX. R. APP. P. 34.6(f).

---

[1] In addition, Mr. Gonzales objects to the assertion that he did not object to the Trial Court's instruction on this point as being outside the record. The record does not support this claim and Mr. Gonzales disagrees with this claim by Appellee. By this, Mr. Gonzales advises the Court that the parties will not be able to agree that the record is as Appellee claims.

Neither the form of the jury charge nor the Trial Court's response to the jury's question is at issue in this appeal–the sufficiency of the evidence to support the verdict is. Appellee's attempt to distract the Court with these extraneous consideration should be ignored.

## B. Appellee's invitation to base the Court's decision on an improperly dismembered Record should be rejected

Appellee presents two major basis for her claim the evidence is sufficient. First, she asserts that the evidence demonstrates that it was in the children's best interest that they "move" from Austin. Secondly, she argues that the evidence shows that it was in their best interest to separate from Mr. Gonzales, their father. Under both theories, though, Appellee invites the Court to rewrite the evidence in the record by deleting parts of the testimony that does not comport with her theory. The Texas Supreme Court considered this approach to evidentiary review in its *City of Keller v. Wilson* decision, explicitly condemning it:

> More generally, evidence cannot be taken out of context in a way that makes it seem to support a verdict when in fact it never did. [FN28] If a witness's statement "I did not do that" is contrary to the jury's verdict, a reviewing court may need to disregard the whole statement, but cannot rewrite it by disregarding the middle word alone.
>
> FN28. *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684, 685 (Tex.2004) (holding no evidence supported defect as comments from deposition "were read out of context").

*City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005). Yet this is precisely what Appellee urges the Court to do here.

Appellee claims that her expert testified that it was "in the best interest of the children that they be able to move from Austin" citing the expert's testimony and her report, which was admitted as an exhibit (Appellee's Brief, page 14 & n21 (citing 4 RR 191-192 and 18 RR 106)). The expert's testimony, though, explicitly tied the "move" to a relocation to New York:

> Q. All right. And the final question, move or don't move, you say move, right?
>
> A. Yes.
>
> Q. *You think it's in the best interest of these boys for mom to be able to move with them up to New York?*
>
> A. *I do.*
>
> Q. And why is that?
>
> A. All the things we've already said, added support. There's some willingness, at least periodic willingness on the father, in that he will be going with them, and so that that -- the relationship between Mr. Gonzales and his kids can -- can remain and continue to grow. And I think she just really needs the support of that extended family to be able to sort of handle all of the moving parts of this divorce and their co-parenting situation.

(4 RR 191-1) (emphasis added). The expert's report also explicitly tied "the move" to a relocation to New York:

> I would be supportive of the idea of *the move to New York*. However, I think it is important that this involve some planning and not be done in an impulsive manner. This will also give Mr. Gonzales some time to apply for his license and start a practice there, if he so chooses. I would recommend a move not occur prior to July, 2013. The family should work with the parenting coordinator to plan where the parties will be

living so that they may coordinate living arrangements within close proximity to each other. This will also give Mr. Gonzales time to arrange mental health care in the area, get his license, and look for work.

(18 RR 106) (emphasis added). Appellee argues that the Court can properly consider the statement "I would be supportive of the idea of the move" as supporting the verdict while deleting out the "to New York" remainder of the sentence. This is *exactly* what the Supreme Court prohibited in *City of Keller*. *Id*.

She also contends that the evidence shows her desire "to move" was not based on ill will or an intent to harm Mr. Gonzales (Appellee's Brief, page 18 (citing 4 RR 162, 6 RR 35)). There is nothing addressing this issue in the expert's testimony on page 162. Where the expert does address Appellee's motives, though, it is explicitly tied to a move to New York:

> Q. Okay. So do you - - do you think that Marissa's desire to *move to New York* is prompted by any desire to hurt Mr. Gonzales's relationship with his sons?
>
> A. No.

(4 RR 181) (emphasis added). Appellee's testimony at 6 RR 35 is also explicitly tied to a move to New York:

> Q. Okay. Okay. Is it your intent to *move to New York* - - do you want to move to New York so that you can hurt Mr. Gonzales?
>
> A. No, absolutely not.

(6 RR 35) (emphasis added).

In virtually every instance cited by Appellee to support the claim that a generic "move" would be in the best interest of the children, the actual testimony was explicitly tied to a move to New York and, where not explicitly tied to New York, was necessarily tied to such a move by the context of the questions and answers surrounding the truncated testimony relied on by Appellee. Under the mandate of *City of Keller*, this is not evidence supporting the jury's verdict permitting a "move" by Appellee to anywhere in Texas.

Appellee also contends that the evidence establishes that a generic "move" from Austin was in the best interest of the children because it would allow the children to "get away from" their father (Appellee's Brief, page 18-20). Again, though, this is not an honest review of the record because much of Appellee's expert's testimony was explicitly based on the assumption that Mr. Gonzales would follow his children if Appellee were to move to New York:

> Q. Okay. And what -- what did you find with regarding her desire to move with the children to New York that's summarized in this No. 5 of your report?
>
> A. Well, there are a couple of things. One is that this is another one of those issues that Mr. Gonzales would go back and forth on. He, on numerous occasions, said to me that he would be fine with a move to New York, that he could use a fresh start himself, and distance from his own family of origin. . . But I think the fact that he was open to it and could see some positive things come out of a move for him I think was one of the things that I relied on in that particular -- for that particular question.

(4 RR 178-179).

Q. Well, I can see how maybe it's important or helpful to Marissa, but how is it helpful for Mr. Gonzales for Marissa -- for the children to have this support structure up in New York?

A. Well, I'm assuming that if he were to go with them, which is part of my understanding is that he was willing to go with them, that then if he does have times where he can't handle it and he can't cope and things are kind of falling apart, and -- and Marissa is working, which she will most likely need to work full-time, then that -- you know, that extended family can step in and help Mr. Gonzales, as well.

(4 RR 183).

Q. You think it's in the best interest of these boys for mom to be able to move with them up to New York?

A. I do.

Q. And why is that?

A. All the things we've already said, added support. There's some willingness, at least periodic willingness on the father, in that he will be going with them, and so that that – the relationship between Mr. Gonzales and his kids can -- can remain and continue to grow. And I think she just really needs the support of that extended family to be able to sort of handle all of the moving parts of this divorce and their co-parenting situation.

(4 RR 191-192).

Again, though Appellee spends much of her brief attacking Mr. Gonzales's character and fitness as a parent, the actual evidence presented in this record demonstrates that the expert on whom Appellee relies expected Mr. Gonzales to move with Appellee (and, according to Appellee, is exactly what happened after Appellee abruptly moved to the Dallas area (Appellee's Brief, page 6, 19)). That is, the expert

never suggests that the move would be designed to create space between Mr. Gonzales and the children because she expected Mr. Gonzales to move as well. Appellee's claim that the evidence supports a move within Texas so that the children would have some separation from Mr. Gonzales is wholly without merit.

The best Appellee can do to support the jury's verdict is to invite the Court to dismember the testimony, removing statements from their context so that pieces of the evidence can be contorted to support the jury's verdict (even down to moving the period in a sentence to make the sentence mean something that the author never intended). This improper approach to the review of the record illustrates the lack of evidence supporting the jury's decision–that is, that Appellee is reduced to urging the Court to rely on improperly dissected evidence demonstrates beyond doubt that there is no evidence in the record to support the jury's verdict. The jury's verdict on the geographic restriction on the children's domicile is wholly unsupported by the record and should be set aside and a new trial ordered on this issue.

## II. *Appellee's defense of the Trial Court's division of the contingent fee interest is based on a strained reading of the evidence and proceedings before the Trial Court*

Appellee's defense of the Trial Court's improper division of the contingency fee interests is premised on two erroneous propositions. First, Appellee contends that the June 19, 2012 letter did not impact the Partnership's interest in the contingency fee cases. To get to this conclusion, Appellee urges the Court to read that letter like

a lawyer not, as it should, as a reasonable client would.  Once the proper lens is applied, Appellee's argument will not stand and, without this foundation, her entire argument collapses.  Her second proposition is that the Trial Court considered issues that were not supported by pleadings, argument, or evidence by considering the "winding up" issues instantaneously alongside the division of the community estate issues.  Again, though, there is nothing in the record to support this post hoc creation by Appellee.

**A.  *To get to Appellee's reading of the June 19, 2012 letter to the clients, the Court must improperly read the letter through a technical, attorney prism***

Appellee claims that because the June 19, 2012 letter does not use the word "withdraw" or "terminate" the letter did not have any effect on the Partnership's interest in the cases, claiming "all the letter did [is] notify the clients of the dissolution" (Appellee's Brief, page 30).  Once again, though, this claim is wholly usupported by a proper review of the entire letter, which provided:

> As of June 1, 2012, Marissa A. Gonzales left our firm to practice as a sole practitioner.  Furthermore, as of June 1, 2012 Nash J. Gonzales will be joining his sister, Ida A. Gonzales who is an Attorney and will continue to operate under the name of Gonzales & Gonzales, Attorneys at Law.
>
> Inasmuch as Marissa A. Gonzales was your designated attorney on the above matter, we are required by the Rules Regulating the State Bar of Texas to inform you that you have the right to choose to have Marissa A. Gonzales continue in her new capacity to represent you in this matter, or you may have the firm known as Gonzales & Gonzales, Attorneys at Law to continue to represent you, in which case the file will be handled

by Nash J. Gonzales and Ida A. Gonzales or you can choose to retain an entirely new attorney.

We want you to be sure that there is no disadvantage to you as the client, from our business separation. The decision as to how the matters we have worked on for you and handled, and who handles them in the future will be completely yours. Whatever you decide will be determinative.

Please, at your earliest opportunity:
> (1) Check the appropriate statement reflecting your wishes.
> (2) Retain one of the two copies of your directives contained herem. for your records.
> (3) Return once copy in the herein provided prepaid addressed envelope. To best protect your interest and promote continuity of representation, please respond quickly.

[] I wish to continue being represented Nash J. Gonzales and understand that his sister Ida A. Gonzales will serve as co-counsel on my case.

[ ] I wish to continue to be represented by Marissa A. Gonzales. Please transfer my file to her new address, all records, files and property in the possession of Nash J. Gonzales as quickly as possible.

[ ] I wish to now be represented by _____
Name and Address of other Attorney

By checking the above box and signing below I hereby provide my directive and clearly understand who will be the attorney(s) responsible for representing me in my case.  Should you have any questions or concerns, you may contact Marissa A. Gonzales at (512) 394-2979 or Nash J. Gonzales at (512) 474-2001.

(CR 520-521).  Contractual communications between an attorney and a client are construed from the standpoint of a reasonable person in the client's circumstances.

*Falk & Fish, L.L.P. v. Pinkston's Lawnmower and Equipment, Inc.*, 317 S.W.3d 523, 528-529 (Tex. App.–Dallas 2010, no pet.) (citing See Restatement (Third) of the Law Governing Lawyers § 18 cmt. h). Appellee urges the Court to instead read this letter like a lawyer. This the Court should not do.

From a reasonable client's perspective, this letter unambiguously advises that Appellee has left the firm, that Mr. Gonzales is forming a firm with his sister, and that the client needed to chose an attorney to go forward with the case (the attorney "who handles them in the future" and "who will be the attorney(s) responsible for representing me in my case") whether it is Mr. Gonzales, Appellee, or an entirely new attorney. The client is urged to act quickly to "protect your interest and promote continuity of representation" (CR 520).

This letter plainly communicates to the client that the Gonzales & Gonzales partnership is no longer going to be involved in the handling of their case. From the client's perspective, this letter unambiguously indicates that the Partnership is withdrawing from the representation whether the word "withdraw" is used or not. In addition, the evidence before the Trial Court reflected that these clients were asked to and did execute new contractual agreements with their new attorney (CR 523-527). And the only testimony before the Trial Court concerning the effect of this letter was Mr. Gonzales's statements to the effect that Appellee had withdrawn from the cases (5 RR 107-108).

Appellee argues that the "the partnership's right to the contingency fee was not terminated prior to the final hearing" presumably meaning the December 2013 Amended/Corrected Final Decree and that "a client's retention of a new attorney, if any, did not extinguish the partnership's right to the fee" (Appellee's Brief, 28 (citing CR 679), 32, 34). A reasonable client would not find it acceptable that the Partnership would maintain its interest while doing nothing on the case from June 2012 to December 2013. And a reasonable person in Olga Maria Gutierrez's position, the client to whom the exemplar letter was addressed and who signed a new contract with Mr. Gonzales, would be stunned to learn that she owed two attorney's fees, 33&1/3% to the Partnership under its contract and 33&1/3% to Mr. Gonzales under the new contract (CR 514, 520, 526). Presumably, so would Mr. Zapata (CR 523). No reasonable client, reading the June 19, 2012 letter would understand that by retaining a new attorney, as urged by the Partnership in its letter, and signing a new contract, the client was subject to a double attorney fee. This is because this letter was intended to and did communicate to the clients that the Partnership was withdrawing from the representation.

Though Appellee now wants to claim otherwise, the letters to the clients had the effect of ending the Partnership's interest in the contingency fee files. By advising the client that a new attorney was required to handle the matter, the Partnership, at a minimum, abandoned the clients resulting in a forfeiture of the

Partnership's interest in the cases. *Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960). And this outcome was agreed to, explicitly, by Appellee as part of the dissolution of the Partnership (CR 517-521). As a result, there was nothing for the Trial Court to divide as part of the community estate and its ruling constitutes an abuse of discretion.

### B.     There was no "winding up" of the Partnership at the final hearing or, if it was considered, the relief requested was denied

Appellee also claims that the Trial Court considered the issues involved in "winding up" the Partnership at the "final hearing" and its distribution of the fee interest in the Corrected/Amended Final Decree of Divorce reflects that process (Appellee Brief, 28). There were, however, no pleadings supporting the request that the Trial Court oversee the winding up of the Partnership. Nor does Appellee point to any indication that the "winding up" issue was actually tired (Appellee's Brief, page 28). *Holden v. Holden*, 456 S.W.3d 642, 651 (Tex. App.–Tyler 2015, no pet.) ("To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue").

Moreover, to the extent that any issue related to this theory was considered by the Trial Court, the Trial Court's judgment denied all relief not expressly granted and so any request to "wind up" the Partnership's affairs was rejected (CR 712). Nothing in the judgment indicates that the Trial Court did *anything* other than divide the community estate (CR 702-707). Appellee's new found "winding up" theory is

unsupported by the pleadings, by the proceedings, by the evidence, and by the judgment and should be rejected by the Court.

## **PRAYER**

As shown here and in Appellants' Brief, the Trial Court erred when it rendered judgment on the basis of jury verdict that has no evidentiary support. Thus, Appellant Nash Gonzales respectfully requests that this Court reverse the Trial Court's December 9, 2013 Amended/Corrected Final Decree of Divorce and remand this action to the lower court for retrial of the area in which the children's residence must be confined. The Trial Court also abused its discretion when it sought to divide the fees generated by Gonzales & Gonzales, GP's former inventory of cases, as established above and in Appellants' Brief. Thus, Appellants Nash Gonzales and Gonzales & Gonzales, P.C. also request that the Court reverse the Trial Court's division of the community estate, render judgment excluding those fees from the community estate, and remanding this matter for further proceedings consistent with the Court's opinion. Alternatively, if the Court concludes that the fee interests are properly included in the community estate, Appellants pray that the Court find the Trial Court's division is not based on sufficient evidence, reverse the division, and remand this suit for further proceedings. Appellants further pray that the Court award them judgment for all costs of appeal and any other and further relief to which they are justly entitled.

Respectfully submitted,

/s/ Thomas B. Cowart
Thomas B. Cowart
Texas Bar No. 00787295
tom@tcowart.com
Wasoff & Cowart, P.L.L.C.
100 North Central Expressway, Suite 901
Richardson, Texas 75080
Tel: (214) 692-9700
Fax: (214) 550-2674

Attorneys for Appellants Nash Gonzales and Gonzales & Gonzales, P.C.

## CERTIFICATE OF COMPLIANCE

Relying on the word-count function in WordPerfect X5, I hereby certify that this entire Appellant's Brief, including the segments of this document which could be excluded in calculating the length of a document under Tex. R. App. P. 9.4(i)(1), contains 4,550 words.

/s/ Thomas B. Cowart

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2015 a true and correct copy of this Appellants' Reply Brief has been served on the following via the efile system:

C. Wilson Shirley III
wilson@ssjmlaw.com
Jessica Marcoux Hall
jessica@ssjmlaw.com
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
512-347-1604
512-347-1676 Facsimile

Attorneys for Appellee Marissa Ann Gonzales

/s/ Thomas B. Cowart
Thomas B. Cowart