

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00035-CV

_____

IN THE INTEREST OF B.M., A CHILD

_____

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-640505-18

_____

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Pursuant to an agreed divorce decree, Appellant Father and Appellee Mother became joint conservators of their only child and had 50/50 or week-on/week-off possession. Based on the 3,086-page volume of exhibits, it is clear that there was a high level of conflict related to the possession and parenting of the child after the decree was rendered as the majority of the exhibits document contentious conversations between the parties on the platform Our Family Wizard. Other documents reflect the numerous times that Father rejected Mother's attempts to communicate with the child on Skype while she was in Father's possession. And the record also reflects Father's inability to co-parent, including instances when he discussed the parties' conflict with the child and when he denied the child the ability to go to events if Mother planned to attend. All of this prompted Mother to file a modification petition seeking to clarify portions of the decree, to reduce Father's possession, and to be granted exclusive rights to make decisions related to the child's health and education. The trial court granted Mother's petition, giving her exclusive rights and giving Father a modified standard possession schedule.[1]

---

[1]In their briefs, the parties often refer to the new possession schedule as "expanded standard," but the trial court's order states that it is a "Modified Standard Possession Order." For consistency, we use the same term as the trial court's order sans capitalization. The new possession schedule abolished the year-round week-on/week-off schedule during the school year, giving Father a weekly Thursday possession and weekend possession on the first, third, and fifth weekends.

In four issues, Father argues that the trial court abused its discretion by (1) modifying the parent–child relationship when the modification was not connected to the parties' changed circumstances, (2) awarding him a modified standard possession schedule, (3) awarding Mother exclusive rights, and (4) not reopening the evidence to allow Father to show that he had started counseling and to explain how his work schedule interfered with the possession schedule. The record supports numerous unchallenged findings of fact that show that the modifications were connected to the parties' changed circumstances. Based on the evidence presented at trial, including the absence of evidence from Father defending against Mother's pleaded-for change to the possession schedule, the results of his psychological evaluation that highlighted his anger issues, and the plethora of evidence of the lack of communication and his inability to effectively co-parent, we cannot say that the trial court abused its discretion by reducing Father's possession and by giving Mother exclusive rights. Furthermore, Father had over two years while Mother's modification petition was pending to start counseling and did not do so until the month after the modification trial, and he failed to put on evidence at trial regarding the necessity of a 50/50 schedule; based on Father's failure to exercise due diligence, the trial court was within its discretion to not reopen the evidence. Accordingly, we affirm.

## II.  Pertinent Procedural Background[2]

The year after Mother filed her initial combined petition to modify the parent–child relationship and to clarify the agreed decree, she filed a first amended combined petition, and this was the live pleading during the modification hearing.  In her pleading, Mother requested that the trial court clarify several provisions from the final decree;[3] sought to be awarded the exclusive right to, among other things, enroll the child in school; and requested that Father be awarded expanded standard possession, a week-on/week-off summer schedule, and the standard holiday possession schedule.

Father filed a counterpetition requesting that he be designated as the conservator with exclusive rights to make various decisions and asked that Mother be awarded an expanded standard possession schedule, a week-on/week-off summer schedule, and the standard holiday possession schedule.  But at trial, Father asked to keep the week-on/week-off schedule year-round with three additional days during the summer to make a ten-day possession for extended travel purposes.

Approximately one month after the modification trial, the trial court issued a letter ruling, reducing Father's possession schedule[4] and giving Mother the exclusive

---

[2]We will set forth the relevant trial testimony within our discussion of the issues.

[3]On appeal, Father does not challenge the clarifications, so we do not detail them.

[4]*See* Tex. Fam. Code Ann. § 153.312 (standard possession schedule for parents who reside 100 miles or less apart), § 153.317 (providing for alternative beginning and

4

right to make educational decisions and to consent to medical, dental, vision, psychiatric, and psychological treatment for the child. Father thereafter filed a motion to reconsider followed by a motion to reopen the evidence. The trial court heard and denied Father's motions and later rendered a modification order setting forth the provisions from the letter ruling. Upon Father's requests, the trial court signed findings of fact and conclusions of law.

### III. Challenges to the Modification Order

In his first, second, and third issues, Father challenges various aspects of the modification order, including whether the modifications correspond to the parties' changed circumstances, whether the trial court abused its discretion by modifying the possession schedule, and whether the trial court abused its discretion by giving Mother various exclusive rights. We set forth the standard of review and the burden of proof that applies to these three issues and then discuss each of Father's arguments in turn, ultimately concluding that the trial court was within its discretion in making the rulings at issue.

### A. Standard of Review and Burden of Proof

This court has previously set forth the standard of review and burden of proof that is applicable to a modification:

---

ending times for a standard possession order), § 153.3171 (providing that the trial court "shall alter the standard possession order" to provide the conservator with alternative beginning and ending possession times when the parents reside fifty miles or less apart).

We review a trial court's decision regarding modification of orders governing managing conservatorship and possession of or access to the child for an abuse of discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see In re A.B.H.*, 266 S.W.3d 596, 601 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g) (applying standard). A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Whether the evidence supporting the decision is legally and factually sufficient is relevant in deciding whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872.

The person seeking to modify an existing custody order bears the burden to prove that a modification would be in the child's best interest and that the circumstances of the child, a conservator, or other party affected by the custody order have materially and substantially changed since the previous custody order. Tex. Fam. Code Ann. § 156.101; *In re J.R.P.*, 526 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

When a party challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established the facts in his favor as a matter of law. *Dow Chem.*[ *Co. v. Francis*], 46 S.W.3d [237,] 241[ (Tex. 2001)]. We first examine the record for evidence to support the finding. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 807 (Tex. App.—Dallas 2011, no pet.). If there is no evidence to support the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We indulge every reasonable inference to support the judgment, crediting favorable evidence if a reasonable fact[]finder could and disregarding contrary evidence unless a reasonable fact[]finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. We must consider and weigh all of the evidence; we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) [(op. on reh'g)].

Here, the trial court issued findings of fact and conclusions of law. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions, and we review the legal and factual sufficiency of the evidence supporting those findings using the same standards that we apply to jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for evidentiary sufficiency. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.). Regarding the terms and conditions of conservatorship, we are mindful that "the trial court is in the best position to observe the credibility and personalities of the witnesses, and, consequently, an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence." *In re R.D.Y.*, 51 S.W.3d 314, 321 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (op. on reh'g).

*In re E.M.*, No. 02-18-00351-CV, 2019 WL 2635565, at *5–6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.).

### B. How the Modification to the Possession Schedule Connects to the Parties' Changed Circumstances[5]

In his first issue, Father argues that the trial court abused its discretion by modifying the parent–child relationship because the possession schedule's modification was not connected to the parties' changed circumstances. Within this issue, Father attacks Finding of Fact No. 22 but ignores numerous other findings of fact that support how the parties' changed circumstances are connected to the possession schedule's modification.

---

[5]Father limits his argument in his first issue to the possession schedule's modification, as he seeks to have this court "render [an order that] the week-on[/]week-off schedule remain in place."

We agree that case law specifically sets forth the crux of Father's argument—that the requested modification must be "somehow connected to the changed circumstances." *See In re A.T.E.*, No. 01-19-00481-CV, 2020 WL 5790417, at *3 (Tex. App.—Houston [1st Dist.] Sept. 29, 2020, no pet.) (mem. op.) (quoting *Smith v. Karanja*, 546 S.W.3d 734, 741–42 (Tex. App.—Houston [1st Dist.] 2018, no pet.)). We disagree, however, with Father's contention that the modification here runs afoul of that premise.

Father points to Finding of Fact No. 22—which states, "[Mother] indicated [that] the lack of communication, co-parenting[,] and cooperation [were] hindrance[s] to the 50/50 schedule"—and argues that "those things all existed at the time of [the] divorce." Father implies that Mother's changed circumstances do not count and that the trial court should have relied on his changed circumstances (i.e., he had remarried and had another child) and the child's changed circumstances (i.e., "she [had started] counseling and was improving") to keep the prior possession schedule.[6] As noted in the case that Father cited (though he did not include this quote in his brief),

---

[6]Father further argues within his first issue that because Mother's and the child's counselors, as well as the parties' psychological evaluations, recommended that the parties participate in co-parenting therapy/facilitation, "Mother's refusal to participate in co-parenting therapy should not entitle her to the modifications made." Father cites no support for this argument. *See generally* Tex. R. App. P. 38.1(i) (stating that a "brief must contain . . . appropriate citations to authorities"). By not adequately briefing this point, Father has not preserved this issue for appellate review. *See Gordon v. Brunig*, No. 2-09-040-CV, 2010 WL 1999313, at *7 (Tex. App.—Fort Worth May 20, 2010, pet. denied) (mem. op.). *See generally E.M.*, 2019 WL 2635565, at *6 ("[A]n

8

There are no firm guidelines about what should qualify as a substantial and material change, but the courts generally have accepted the following changes: (1) remarriage by a party, (2) poisoning of the child's mind by a party, (3) change in home surroundings, (4) mistreatment of the child by a parent or step-parent, and (5) a parent's becoming an improper person to exercise custody.

*Id.* (citing *Smith*, 546 S.W.3d at 741).

Looking at the record, Mother explained that part of the lack of communication related to how hard it was for her to communicate with the child when the child was with Father. On numerous occasions when the child was with Father, he had denied Mother the opportunity to Skype with the child.[7]

Mother also elaborated regarding what circumstances had changed that warranted a modification:

Several things have changed. There's been a lack of co-parenting. There's been a lack of communication, no communication, withholding of communication with regards to electronic access, medical, school, extracurricular activities, the possession schedule.

In addition to the lack of communication, it's caused stress on our child. It's the sacrifice of the child. It's the disparaging remarks that are on [Our Family Wizard] and in person, as well as in front of our child. It's the constant dishonesty. And, lastly, it's the complete disregard of our court orders.[8]

---

abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence." (quoting *R.D.Y.*, 51 S.W.3d at 321)).

[7]Mother admitted that Father let her call the child "the majority of the time" and that they had come to an agreement before the modification hearing as to the use of Skype going forward.

[8]The record includes the March 2021 temporary orders, which required the parent not in possession to designate the type of communication desired (e.g., Skype,

Mother testified that based on things the child had said to her, Mother believed that the child was aware of the conflict and that Father was trying to bring her into it.

The issues that Mother pointed to were borne out in the following findings of fact, which were taken almost verbatim from the record and are not challenged by Father within his first issue:

23.　The child was exposed to severe parental conflict and discussion of the litigation.

. . . .

27.　[Father's] psychological evaluation admitted into evidence at trial found:

a.　[Father] was anger-prone[ and] has problems with anger, irritability[,] and low tolerance for frustration.

. . . .

30.　[Father] was not actively engaged in individual counseling.

31.　The child's counselor reported that the child was brought into the parental conflict at [Father's] home.

. . . .

35.　[Father] did not follow the [c]ourt's temporary orders as to electronic communication[, i.e., allowing the child to Skype with Mother during Father's periods of possession].

. . . .

_____

phone call, or FaceTime) in Our Family Wizard and provided that Mother was allowed to communicate with the child via the designated communication type on Tuesdays at 7:00 p.m. and on Saturdays at 5:00 p.m. when the child was with Father.

10

39.    [Father] made disparaging remarks about [Mother] in public in front of others.

40.    [Father] stated [that Mother] was "crazy" at the child's meet-the-teacher event.

. . . .

42.    [Father] called the child an "id[io]t" during a call between the child and [Mother] during [Father's] period of possession.

. . . .

47.    [Father] would not have the child attend an activity if [Mother was planning to be] in attendance[,] and this was a detriment to the child.

48.    [Father] discussed the litigation with the child and specifically told the child that [Mother] was trying to reduce the child's time with [Father] and [Father's] family.

49.    [Father] told the child that [Mother] was trying to take the child away from [Father].

50.    [Father's] comments to the child about the litigation had occurred at least once in the six months prior to trial.

Although Mother may have described the changes that had occurred in broad terms, such as "lack of communication" and "lack of co-parenting," the testimony at trial and the summary of that testimony (as noted in the unchallenged findings that are set forth above) demonstrates that Father had attempted to turn the child against Mother and had called the child an "idiot." As this court has previously noted in a modification case, "It is not our role to rebalance a decision that falls within the trial court's discretion." *E.M.*, 2019 WL 2635565, at *8. Accordingly, we conclude that

11

the modification order's reduction of Father's possession is sufficiently connected to the changes that were described in the unchallenged findings, which are supported by the record. *See id.* ("Generally, there is not an abuse of discretion when there is some evidence to support the trial court's finding on an issue of fact." (quoting *Roa v. Roa*, 970 S.W.2d 163, 165 (Tex. App.—Fort Worth 1998, no pet.)).

We therefore overrule Father's first issue.

## C. No Abuse of Discretion in Modifying the Possession Schedule

In his second issue, Father argues that the trial court abused its discretion by awarding Father a "standard possession schedule."[9] Father contends that his pilot schedule makes the "standard possession schedule" unworkable or inappropriate and that the new possession schedule provides less than the presumptive minimum possession to which Father is entitled. Father ignores that he had also counterpetitioned for Mother to have expanded standard possession, that he failed to put on evidence at trial to defend against the requested change of possession in Mother's modification petition, and that the modified standard possession order does not provide less than the presumptive minimum possession to which he is entitled.

---

[9]It is unclear why Father uses the term "standard possession schedule" in this issue but elsewhere in his brief states that he was awarded "expanded standard possession." As we noted at the outset of the opinion, the modification order states that Father was awarded "modified standard possession."

### 1.    Applicable Law

As explained by the Houston Fourteenth Court of Appeals, the child's best interest guides the possession decision:

> In suits affecting the parent-child relationship, there is a rebuttable presumption that a standard possession order, as outlined in the Family Code, is in the best interest of the child. *See* Tex. Fam. Code [Ann.] § 153.252. A court may deviate from the terms of the standard order if those terms would be unworkable or inappropriate and against the child's best interest[] or if there is an agreement between the parties. *See id.* §§ 153.253, 153.255. In ordering terms other than those contained in a standard order, a court may consider (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factors. *Id.* § 153.256. . . . We give wide latitude to a trial court's determinations on possession and visitation issues, reversing the court's decision only if it appears that the court abused its discretion in light of the record as a whole. *See In re S.A.H.*, 420 S.W.3d 911, 930 n.31 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

*In re G.M.*, No. 14-20-00044-CV, 2021 WL 1881048, at *4 (Tex. App.—Houston [14th Dist.] May 11, 2021, no pet.) (mem. op.).

### 2.    Analysis

We begin by noting that one month before the modification trial, Father filed his counterpetition, seeking to have the trial court order expanded standard possession for Mother. Altering the possession schedule as Father petitioned the court to do would have done exactly what the current modification order does—break up the 50/50 or week-on/week-off schedule with Thursday possessions and give back-to-back weekend possessions when there is a fifth weekend followed by a

first weekend—but for the opposite parent. Without filing an amended counterpetition and leaving the stance of his counterpetition as described, Father testified at trial that he wanted to maintain the 50/50 possession schedule and just add three days to the summer possession schedule. Father, however, provided no explanation for what caused him to change course from the stance he had taken in his counterpetition.[10]

Moreover, Father was on notice that Mother had requested a change in possession in her modification petition but did not defend against that. At trial, Mother requested that Father be given the standard possession order but with a week-on/week-off schedule during the summer and standard holidays. Mother opined that the standard possession order would be in the child's best interest because "the 50/50 [schedule] requires a lot of communication and a lot of cooperation. And because of the lack of co-parenting and because of the difficult communications, it's made it very difficult to co-parent. And I think that [the child] would be able to have a more stable schedule."

Father now claims that Mother's requested possession schedule is unworkable because of his schedule as an airline pilot, but he did not put on any evidence during the modification trial to show that any alterations to the 50/50 possession schedule

---

[10]Father said only that he was not asking the court to reduce Mother's time with the child and opined, "I think the agreement that we had four years ago for the week[-]on[/]week[-]off schedule is great for [the child]. It fits everyone's lifestyle. It's what we've all become accustomed to. And [the child] is thriving with that schedule."

would be unworkable or inappropriate due to his pilot schedule. Father even points to this lack of evidence, arguing that "[t]he trial court even found that Father flew when he did not have the child and that the standard possession schedule might interfere with [his] ability to see the child. The trial court found that it 'might' interfere, but there was no evidence to the contrary that it *would* interfere."[11] [Record citation omitted.] Father then attempts to discount his wife's testimony on cross-examination that he usually flies when the child is with Mother but that "[t]o an extent," he has some control over his schedule and has some flexibility to coordinate his work schedule with the possession schedule; he argues that we should discount his present wife's testimony because it is not supported by any facts. Yet Father ignores that after his wife made these statements, his attorney could have asked her more questions but instead passed the witness. Nor did his attorney recall Father to explain how his work schedule might interfere with his ability to see the child during his times of possession. Though he knew of the modification that Mother sought and of how his job duties were scheduled, Father failed to defend against Mother's request for a change of possession.[12] The trial court as the factfinder had the ability to make

---

[11]Father is referencing Finding of Fact No. 53: "If awarded a standard possession schedule, [Father's] flight schedule might interfere with [his] seeing the child." The other finding that Father challenges within this issue is Finding of Fact No. 54: "[Father] has some control over his flight schedule."

[12]Father points out that he provided "additional evidence in his offer of proof" and then cites to the record of the hearing on his motion to reopen the evidence. The trial court, however, denied his motion to reopen the evidence, and we therefore do

credibility determinations and chose to believe Father's wife, and we defer to the trial court's credibility determination. *See In re De La Pena*, 999 S.W.2d 521, 529 (Tex. App.—El Paso 1999, no pet.) ("Appellate courts routinely defer to the [factfinder] at trial concerning matters of credibility and demeanor, but perhaps in no other type of litigation is it more critical [than family-law matters]."). Accordingly, we conclude that there is some evidence to support Findings of Fact Nos. 53 and 54.

Father also argues within his second issue that the possession schedule provides less than the presumptive minimum possession to which Father is entitled. Mother responds that she is confused by this argument because the trial court's order granted Father "even more than what is commonly referred to as [e]xpanded

---

not consider that evidence. *See generally Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275 (Tex. 1995) (explaining that an appellate court generally may not reverse and render judgment on excluded evidence and that evidence cannot be deemed conclusive in a legal-sufficiency review unless it was actually admitted and the opposing party failed to rebut it). Alternatively, even if we did consider evidence from the hearing on the motion to reopen the evidence, we would reach the same conclusion on Father's challenges to the changes to the possession schedule. Father explained that his employer's scheduling system required him to enter a request for the dates that he wanted to work, that the assignments were based on seniority, and that he found out on the fifteenth of each month what days he would fly during the following month. Because the assignments were based on seniority, Father did not demonstrate that he was ever guaranteed to get the dates that he requested.

Additionally, Father relies on *In re K.R.*, No. 02-15-00276-CV, 2016 WL 3198611, at *9 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.), in which this court held that the record contained some evidence that leaving the existing possession schedule in place would be in the child's best interest, "particularly in light of [the child's] autism and [f]ather's stated inability to make possession work on Thursdays based on his work schedule." The opinion in *K.R.* detailed Father's work hours and the days on which he worked—evidence that is lacking in the case here. *K.R.* is therefore not analogous to the facts before us.

16

[s]tandard." *See Schaefer v. Schaefer*, No. 13-22-00463-CV, 2023 WL 7860803, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 16, 2023, no pet.) (mem. op.) (noting that Family Code Section 153.317 is frequently referred to as an "expanded possession schedule"). As Mother explains, under the modified standard possession order,

> Father was granted possession during the school term from basically when school lets out on Thursday until Monday morning when school resumes on the first, third[,] and fifth weekend of the month. Standard [possession] is from 6:00 p.m. on Friday to 6:00 p.m. on Sunday on the first, third[,] and fifth weekends of the month. Further, Father has possession of the child on every Thursday when school lets out until Friday morning when school resumes. Additionally, Father was awarded week-on[/]week-off possession during the summer, which again is more than the 28 days in the summer that he would get under a [s]tandard [p]ossession [o]rder. [Record citation omitted.]

Father then tries to use evidence from the hearing on the motion to reopen to show that he could only exercise about seventy percent of the standard possession schedule and was therefore getting less than the reasonable minimum because of his work schedule. But as we discussed above, Father failed to put on any evidence of his work schedule during the modification hearing.

Father also argues that the possession schedule was not in the child's best interest, contending that the 50/50 schedule was "res judicata of the child's best interest." Father bases his res judicata argument on the fact that his employment had not changed. But he ignores the parties' changed circumstances that were proven, as we discussed above in our analysis of his first issue. *See In re T.I.*, No. 06-20-00089-

17

CV, 2021 WL 3669339, at *10 n.15 (Tex. App.—Texarkana Aug. 19, 2021, no pet.) (mem. op.) (stating that res judicata is not applicable if there has been a showing of a material and substantial change of circumstances since the rendition of the order).

Father also argues that the evidence is legally and factually insufficient to support the trial court's best-interest conclusions of law as set forth in Conclusions of Law No. 61 and No. 68:

> 61.     The [c]ourt finds that . . . modification of the October 22, 2019 Final Decree of Divorce is in the best interest of the [c]hild.
>
>         . . . .
>
> 68.     The [c]ourt finds that the expanded standard possession schedule during the school year, a week[-]on/week[-]off schedule during the summer[,] and standard holidays in conformity with Texas Family Code [Section] 153.3171 is in the best interest of the child.

Father argues that "the overwhelming weight of the evidence shows that changing the [possession] schedule was not in the child's best interest" and lists the following as support for his argument:  the child loved both parents; the child was thriving under the current schedule; the week-on/week-off schedule fit everyone's lifestyle; the child does not handle major changes well; the child was "doing really well right now"; the child was only in "supportive therapy"; the child's therapist had no concerns about either parent's house or the time the child was spending with either parent; Mother admitted that "it would devastate" the child to spend less time with her baby sister; the child was "a happy, healthy girl" and was doing very well; the child was not reporting anything about either parent's home; the child's school records showed that

18

she was "handling staying every other week with mom and dad very well"; and Mother thought Father should be involved in the child's life. But the record also shows the following:

- Mother had been seeing a counselor since 2018 to focus on individual parenting so that she could learn everything she could to best help her child and how to communicate with Father in ways that would keep the conflict as low as possible, while Father admitted at the modification trial that he had not sought out a counselor or a parenting coach despite having admitted that his communications with Mother were inappropriate and despite that his psychological evaluation had recommended individualized counseling;

- The child's therapist testified that the child was aware of the parties' conflict because "things have been said in front of her" and that Father was more vocal about the conflict;

- Mother echoed that the child had made statements indicating that she was aware of the parties' conflict, and Mother believed that Father was trying to bring the child into the conflict;

- Father admitted that he had talked about the litigation in front of the child and had told her that Mother was trying to reduce the time the child spent with his family, that Mother wanted the child to attend a different school, and that Mother was trying to take the child away from him and from her sister;

- Mother testified regarding how hard it was to communicate with the child when she was with Father, and the record included documentation showing numerous unanswered Skype calls that Mother had initiated while the child was in Father's possession;

- Father said that when the child was in his possession, he would not take the child to events (e.g., her American Heritage Girl troop's rocket launch) if Mother was going to be there, and he admitted that this punished the child, not Mother;

19

- As noted above, Mother opined that due to the communication issues with the 50/50 schedule, a reduction in Father's possession would enable the child to "have a more stable schedule";

- Mother agreed that some of the disparaging communications had subsided now that Father had remarried but that communication remained difficult;

- Mother did not agree that the child was doing well under the 50/50 schedule and opined that it was best for the child to have more time with her than with Father;

- Father opined that reducing his time with the child was not going to improve his communications with Mother.

- Father, not the child's therapist, was the one who testified that the child does not handle major changes well and who opined that a major change in the parties' possession would not be healthy for the child;

- Father disagreed with the findings on his psychological evaluation that said he has problems with anger and irritability and a low tolerance for frustration; holds grudges; has temper tantrums; and is hostile, argumentative, and abusive;

- Father admitted that he did not tell Mother that he had enrolled the child in dance camp and soccer camp and that during the three months leading up to the trial, he had not responded to Mother's inquiries about the date of the child's recital; and

- The same school record that Father highlighted as saying that the child was handling staying with Mother and Father every other week very well also said that communication between the parents was difficult and necessitated the teacher's having to make copies of assignments so that both parents had them.

We conclude that the trial court did not abuse its discretion by reaching Conclusions of Law No. 61 and No. 68, which were supported by legally and factually sufficient evidence. Because the trial court heard sufficient evidence on which to base

20

its decision, we hold that the trial court did not abuse its discretion by finding that the modified standard possession schedule is in the child's best interest. *See In re S.M.Q.*, No. 05-24-00024-CV, 2024 WL 4750518, at *6 (Tex. App.—Dallas Nov. 12, 2024, no pet.) (mem. op.) (holding that the record contained legally and factually sufficient evidence that it was in the child's best interest to grant mother's request for decreased possession by father such that the trial court did not abuse its discretion by granting mother's motion to modify); *In re S.B.*, No. 05-20-00338-CV, 2023 WL 6284703, at *8 (Tex. App.—Dallas Sept. 27, 2023, no pet.) (mem. op. on reh'g) (concluding that the trial court heard sufficient evidence and did not abuse its discretion by deviating from the standard possession order). *See generally E.M.*, 2019 WL 2635565, at *6 (stating that "the trial court is in the best position to observe the credibility and personalities of the witnesses, and, consequently, an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence" (quoting *R.D.Y.*, 51 S.W.3d at 321)).

Accordingly, we overrule Father's second issue.

### D.    No Abuse of Discretion in Granting Mother Exclusive Rights

In his third issue, Father argues that the trial court abused its discretion by awarding Mother exclusive rights. Father argues that divesting him "of rights" is not in the child's best interest, but the only right that he specifically challenges is school enrollment, arguing that the trial court abused its discretion by allowing Mother to enroll the child in private school. Although Father challenges six findings of fact, he fails to challenge numerous findings of fact that show why the trial court gave Mother

exclusive rights, and as we explain below, the trial court was within its discretion in giving Mother the school-enrollment right.

### 1. Law on Rights and Duties of Parents

As explained by the Fourteenth Court of Appeals,

> In rendering an order appointing joint managing conservators, the [trial] court shall designate the conservator who has the exclusive right to determine the primary residence of the child. [Tex. Fam. Code Ann.] § 153.134(b)(1). The trial court's order must also allocate between the parents[—]independently, jointly[,] or exclusively[—]the remaining rights and duties of a parent. *Id.* § 153.134(b)(4). The rights of a parent include the right to make decisions concerning the child's education[] and to consent to medical and dental care as well as psychological and psychiatric treatment. *Id.* § 151.001(a)(6)[,] (10). "[T]he trial court retains broad discretion in crafting the rights and duties of each conservator in effectuating the best interest of the child." *London v. London,* 94 S.W.3d 139, 150 (Tex. App.—Houston [14th Dist.] 2002, [no] pet. . . . ).

*Swaab v. Swaab,* 282 S.W.3d 519, 532 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.). There is no bright-line rule for determining what is in a child's best interest; each case must be determined on its unique set of facts. *See Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex. 2002).

### 2. Granting Exclusive Rights to Mother Is in Child's Best Interest

Father begins his exclusive-rights argument by contending that "at the time of the divorce, the parties did not communicate or co-parent well," and "[t]hus[] it was res judicata that independent rights to each party was in the child's best interest when the parties had communication and co-parenting struggles." As we noted above,

Father's res judicata argument fails in light of the parties' changed circumstances. *See T.I.*, 2021 WL 3669339, at *10 n.15.

Father then challenges the legal and factual sufficiency of the evidence to support the following findings of fact:

| Finding of fact | Father's main argument |
| --- | --- |
| 25. [Father's] wife actively attempted to participate in the child's doctor appointments, eye appointments[,] and education. | "Father's wife provided information to professionals and the school; she did not make decisions regarding the child." |
| 37. [Father] continually engaged in name-calling and belittling communications with [Mother] and specifically told [Mother]:<br>a. She was small-minded;<br>b. She was retarded;<br>c. To calm[ ]down;<br>d. Accused [Mother] of having [M]unchausen[ syndrome];<br>e. To sit down and color;<br>f. That Tricare believed [Mother] was a nut-job; [and]<br>g. [She] sucked at life[.] | "While Father has said those things in the past, Mother admitted that the name-calling messages were all two to three years old." Father challenges the "continually" language in this finding. |
| 38. [Father's] inappropriate communications did not cease until [his] wife assisted [him] in writing his communications directed at [Mother]. | "[L]egally and factually insufficient evidence exists to support [F]inding [of Fact No.] 38 that Father's messages did not improve until Father's wife started helping him; rather, any name-calling messages were from years prior." |
| 41. [Father] relied on his wife to assist him in parenting the child, attending appointments for the child, communicating with the child's school, attending and discussing the child's medical conditions[,] and communicating with [Mother]. | "Nothing showed that Father 'relied' on his wife to do anything regarding the child, only communicating with Mother." |

23

| | |
|---|---|
| 43. [Mother] provided information to [Father] about the child's doctor appointments and rescheduled appointments when [Father] was unavailable. [sic] | "[T]he record discloses that Mother only rescheduled one appointment for Father." |
| 46. [Father] testified that counseling was an unnecessary expense and refused to pay for the child's counseling appointments. | Father contends that this finding is misleading because "while Father did not know why Mother was taking the child to counseling, leading him to believe it was unnecessary until he talked with [the child's counselor], he later thought it was good for the child." Father further notes that the parties had settled their medical payment issues. |

Even if we take as true all of Father's arguments, other unchallenged findings support the portion of the trial court's modification order giving Mother various exclusive rights. Within this issue, Father has again failed to challenge the findings that we discussed above with his first issue regarding how he had made poor decisions by dragging the child into the parties' conflict; by discussing the litigation with the child, including telling the child that Mother was trying to take the child away from Father; by refusing to allow Mother to communicate with the child by Skype during his periods of possession; and by refusing to allow the child to participate in events if Mother were going to be in attendance, which Father admitted punished the child—all of which were not in the child's best interest.

Father further ignores the following findings that are supported by the record:

26. [Mother] traditionally made the child's doctor and dentist appointments.

. . . .

24

51.     [Mother] is the person [who] primar[ily] takes the child to her medical appointments.

And the record demonstrates that when Mother was asked if there was a reason why she needed to have the exclusive right to make psychological decisions for the child when Father had agreed to the therapist that Mother had chosen, she responded, "Yes, because of the combativeness and the constant difficulty regarding this process."

Moreover, Father cites no case in which exclusive rights were at issue.[13] Mother, however, cites to several cases holding that the trial court was justified in selecting one parent as the exclusive decision-maker to avoid conflict when the record reflected evidence of an inability to effectively co-parent. *See Coburn v. Moreland*, 433 S.W.3d 809, 827–28 (Tex. App.—Austin 2014, no pet.); *Swaab*, 282 S.W.2d at 533.

Here, the trial court had before it evidence of Father's inability to effectively co-parent, his parenting decisions that he admitted punished the child rather than Mother, and the fact that Mother was already the parent who was primarily handling the child's medical and dental care and had initiated the child's therapy. On this record and under the highly deferential standard of review applied in modification

_____

[13]We note that Father's only citations within his exclusive-rights argument are to (1) a 1969 case that concluded there was no material change in circumstances to warrant modification and (2) a case for the proposition that a trial court abuses its discretion when it acts arbitrarily or unreasonably. *See Knowles v. Grimes*, 437 S.W.2d 816, 817–18 (Tex. 1969). *See generally Iliff*, 339 S.W.3d at 78 (stating abuse-of-discretion standard).

cases, we cannot conclude that the trial court abused its discretion by concluding that it is in the child's best interest for Mother to be granted the exclusive right to make health-care decisions for the child.[14] *See Coburn*, 433 S.W.3d at 828; *see also Johnson v. Johnson*, No. 03-19-00196-CV, 2020 WL 4726589, at *10 (Tex. App.—Austin Aug. 13, 2020, no pet.) (mem. op.) (observing that although there was no evidence that mother was unable to make decisions competently, there was "testimony about the parents' substantial difficulties in co-parenting, communicating with each other, and handling appointments for the children"—as well as a finding that there was a reasonable expectation that the parents would be unable to reach shared decisions regarding the children in the future—that supported the trial court's decision to appoint father as the exclusive decision-maker). We thus conclude that legally and factually sufficient

---

[14]In addition to the school-enrollment right, which was set out separately in the modification order, the order enumerated eleven items that were designated as "exclusive right," "independent right," or "independent duty." Some of these rights include designating the primary residence, representing the child in legal actions, consenting to marriage and to enlistment in the military, applying for a passport, managing the child's estate, and acting as the child's agent. Father has not listed or specifically attacked any of these rights or duties. To the extent that Father is challenging any of the other exclusive rights given to Mother, we hold that—with the exception of the school-enrollment right, which we discuss below—he has failed to adequately brief them. *See* Tex. R. App. P. 38.1(i) (requiring a brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Sloan v. Sloan*, No. 02-23-00361-CV, 2024 WL 4509728, at *11 n.27 (Tex. App.—Fort Worth Oct. 17, 2024, no pet.) (mem. op.) ("To the extent that [appellant] is attempting to complain about the trial court's finding based on some factor other than the arguments advanced in her second issue, we hold that said complaint is inadequately briefed.").

evidence supports the unchallenged findings, which in turn support the trial court's exclusive-rights determination.

Accordingly, we overrule the first portion of Father's third issue.

### 3. Propriety of Granting School-Enrollment Right to Mother

Separately within his third issue, Father argues that the trial court abused its discretion by allowing Mother to enroll the child in private school. The crux of Father's argument delves into the school-enrollment decision that Mother made—i.e., choosing private Catholic school instead of public school—rather than the trial court's decision to grant Mother the school-enrollment right.[15] For all the reasons we discussed above regarding the trial court's decision to grant Mother exclusive rights, we cannot say that the trial court abused its discretion by granting Mother the school-enrollment right.

We overrule the remainder of Father's third issue.

### IV. No Abuse of Discretion by Denying Motion to Reopen

In his fourth issue, Father argues that the trial court abused its discretion by not reopening the evidence to allow him (1) to detail how the new possession schedule

---

[15]Moreover, the modification order does not mention private school but instead leaves the door open for Mother to choose the type of school:

> Notwithstanding any provision in this order to the contrary, IT IS ORDERED that [Mother] shall have the exclusive right to enroll the child in school. Each conservator, during that conservator's period of possession, is ORDERED to ensure the child's attendance in the schools in which [Mother] has enrolled the child.

was unworkable with his pilot schedule and (2) to share that he had started individual counseling. Because Father was on notice from Mother's live pleading that she wanted a change from the 50/50 possession schedule and yet he failed to put on evidence to defend against such change and because Father knew that counseling had been recommended for him while the case was pending but failed to start counseling until the same month that the trial court issued its letter ruling, we cannot say that the trial court abused its discretion by denying his motion to reopen the evidence.

### A. Applicable Law and Standard of Review

We recently set forth the applicable law and the standard of review for a ruling on whether to reopen the evidence:

> Pursuant to Texas Rule of Civil Procedure 270, "When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." Tex. R. Civ. P. 270. The decision to reopen the evidence is within the sound discretion of the trial court, and the trial court should liberally exercise its discretion in the interest of justice so that all parties can fully develop their case. *In re E.G.M.*, No. 04-22-00319-CV, 2024 WL 1643343, at *4 (Tex. App.—San Antonio Apr. 17, 2024, no pet.) (mem. op.); *Holden v. Holden*, 456 S.W.3d 642, 648 (Tex. App.—Tyler 2015, no pet.). A trial court's decision to reopen the evidence will not be disturbed on appeal absent a clear abuse of discretion. *Holden*, 456 S.W.3d at 648.

> In determining whether to grant a motion to reopen, a trial court may consider a number of factors, including whether[] (1) the moving party showed due diligence in obtaining the evidence, (2) the proffered evidence is decisive, (3) reception of such evidence will cause undue delay, and (4) granting the motion will cause an injustice. *Wade v. Wade*, No. 01-13-00912-CV, 2014 WL 3398393, at *8 (Tex. App.—Houston

[1st Dist.] July 10, 2014, no pet.) (mem. op.); *Hernandez v. Lautensack*, 201 S.W.3d 771, 779 (Tex. App.—Fort Worth 2006, pet. denied).

*Hale v. Hale*, No. 02-23-00234-CV, 2024 WL 4510195, at *12 (Tex. App.—Fort Worth Oct. 17, 2024, no pet. h.) (mem. op.).

### B. Offer of Proof

After the trial court denied Father's motion to reopen the evidence, Father made an offer of proof. During the offer of proof, Father's therapist testified that Father had started seeing her in September 2023 to learn ways to better co-parent. Father's therapist said that Father had been eager to listen to her advice and to follow her recommendations on setting boundaries, on learning not to react, and on learning to respond differently and to communicate more effectively. Father had indicated to her a willingness to continue in therapy.

Father also testified during the offer of proof. Father said that it was "pretty much impossible" for him to make the new possession schedule work. Father detailed that after the new possession schedule took effect, he had been able to see the child only eight of the eleven dates allowed during October. Father explained that his work schedule as a pilot is based on seniority:

> [Y]ou put in requests for certain trips or certain days that you want to work. And then on the 15th of the month -- like, say for example, December 15th[,] your schedule comes out for the month of January. Whether you get what you want or not all depends on your seniority number . . . .
>
> My goal is to move over to the left seat and become a captain, which is a natural pro[gr]ession from where I'm sitting now as a first

29

officer, which will further degrade my seniority. Because I will now be compared to all of the other captains instead of the first officers.

Father explained that it is very difficult for him to attend visits on Thursdays and that any random day during the week would be difficult to have visits because most of his trips are three or four days, which made "it really nice to be able to pair them together and do a week on, week off." Father estimated that under the 50/50 schedule, he had been able to exercise 99% of his visitation. Father opined that the new possession schedule was not in the child's best interest.

Father testified that the modification trial was "fairly traumatic" for him and that he felt that his character "was severely defamed." He explained that he had done "a lot of self-reflection over that communication" (i.e., the emails that he had sent Mother) and had taken it upon himself to go and find someone to talk with and discuss the issues to help him become a better co-parent and to better respond to Mother's messages in Our Family Wizard. Father said that he was working with his therapist on his responses and was going to continue meeting with her on a regular basis.

## C. Analysis

Within his fourth issue, Father does not attack any finding of fact. As we noted above in discussing Father's second issue, Finding of Fact No. 53 states that "[i]f awarded a standard possession schedule, [Father's] flight schedule might interfere with [his] seeing the child." The trial court thus did not make a finding regarding the

30

effect Father's flight schedule might have on an expanded or modified standard possession schedule. Further, the trial court, in Finding of Fact No. 54, found that Father "has some control over his flight schedule."

After reviewing the record, we conclude that the trial court could have determined that Father, who had filed a counterpetition requesting modification of the possession schedule, had the opportunity to offer evidence at trial regarding how his work schedule could not accommodate an expanded or modified standard possession schedule but failed to exercise due diligence by waiting until after the trial court had rendered its order to do so.

The trial court could have also concluded that Father had not exercised due diligence in starting counseling. The trial court noted at the end of the modification trial that Father had mentioned

> that it was a very recent psych eval that recommended that you get individual therapy, but it was November [2022]. It's [now] August of [2023]. And if you've been too busy or haven't had time or you haven't had an opportunity to look into it and choose one, I would say that if we don't do anything to require you to do that, then you probably won't.

Father thus had approximately ten months' notice before the modification trial that individual therapy had been recommended for him, but he failed to start counseling until the month after the trial.

Based on Father's failure to exercise due diligence, we hold that the trial court did not abuse its discretion by refusing to reopen the evidence to allow Father to put on evidence about his flight schedule and his new practice of attending individual

31

counseling. *See Matter of Marriage of Hale*, No. 06-22-00066-CV, 2023 WL 2979026, at *2 (Tex. App.—Texarkana Apr. 18, 2023, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by refusing to reopen the evidence because "the trial court could have determined that [husband] had the opportunity to obtain the evidence to prove his claims before the final hearing but did not exercise due diligence by waiting until after the trial had concluded"); *Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied) (holding that "[t]he trial court could have reasonably concluded, on this record, that [appellant's] desire to offer additional evidence was related to the trial court's ruling in its final judgment" and that "[u]nder these circumstances, 'the interests of justice do not warrant a second bite at the apple'" (quoting *Estrello v. Elboar*, 965 S.W.2d 754, 759 (Tex. App.—Fort Worth 1998, no pet.)).

We overrule Father's fourth issue.

## V. Conclusion

Having overruled Father's four issues, we affirm the trial court's modification order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: January 16, 2025